## Charles W. Sammis v. Charles Poole et al.

·1. CHANCERY PRACTICE—*What is a Final Decree in the Settlement of Partnership Accounts.*—Where a partner files a bill against his copartner and lien creditors, a decree which sets aside one lien and settles the order of all other liens and gives the data upon which the amounts due thereon can be computed, and orders the firm property sold and paid upon the liens in the order established, is a final decree and reviewable on error, though it refers the cause to a master to make computation of the amounts due each lien creditor before payment shall be made, and though it does not settle the accounts between the partners.

2. SAME—*Cross-bill by Lien Creditors May Pass to Final Decree.*— Cross-bills by lien creditors may pass to final decree establishing or setting aside the liens, and directing sale of the property to pay them, though the accounts between the several debtors are not yet determined under the original bill.

3. ESTOPPEL—*Of a Principal by His Agent's Stipulation.*—Where an agent of a defendant signs a stipulation in the name of his principal and turns property over to a receiver pursuant thereto, and the principal does not revoke the action of his agent nor apply to the court to be restored to his property, he can not be heard in an appellant tribunal to deny that the stipulation is binding upon him.

4. SAME—*Where Parties Permit a Court to Act Under a Stipulation Without Objection.*—Where parties to a cause do not sign a stipulation filed therein, but permit the court to act thereunder without objection, and accept valuable financial benefits resulting to them from the enforcemènt of the stipulation, they will not afterward be heard to say it does not bind them.

5. FORFEITURES—*Non-payment of Rent as. When Not To Be Enforced in Equity as Against Creditors of the Tenant.*—Where a lease provides that in case of default in payment of rent all machinery and improvements placed upon the premises by the tenant shall be forfeited to and become the property of the landlord as liquidated damages, this provision will not be enforced in equity as against other creditors of the tenant who acquire valid liens upon said machinery and improvements before the landlord asserted any rights under said provision.

ᶦ 6. LANDLORD AND TENANT—*Where a Landlord Permits Property, on Which He Has a Lien, to be Turned Over to a Receiver.*—If a landlord, having a right to assert a lien upon personal property of his tenant for unpaid rent, permits it to be turned over to a receiver, and receives financial benefits from the receivership, he can not afterward assert any lien for such unpaid rent as against the receiver or lien creditors who had levied executions upon said property before the receiver was appointed.

Sammis v. Poole.

7. CHATTEL MORTGAGEES—*When Estopped to Assert Liens.*—Where a chattel mortgagee obtains possession of personal property by replevin against a sheriff holding it on execution, and then surrenders it to a receiver in a chancery cause wherein he is a defendant, and stipulates that the validity of his mortgage shall be determined in that cause, and the pleadings therein raise the issue of its validity, he can not defeat the jurisdiction of the court to determine its validity in that cause by afterward taking judgment by default against the sheriff in the replevin suit, without notice to those who in the chancery suit assail the validity of his mortgage.

**Bill to Settle Partnership Accounts.**—Error to the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at October term, 1899. Affirmed. Opinion filed April 10, 1900.

ERNEST SAUNDERS, solicitor for plaintiff in error; DAVID S. GEER, of counsel.

BOTSFORD, WAYNE & BOTSFORD, attorneys for defendants in error.

JOHN A. RUSSELL, attorney for Charles Poole.

CHAS. WHEATON, attorney for M. H. Thompson and W. F. Hunter, defendants in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

M. H. Thompson and W. F. Hunter owned lands in Hanover township, in the western part of Cook county, near the city of Elgin, in Kane county. On May 1, 1895, they leased a part of said lands to Fred H. Sammis for a term of years, for use as a gravel pit and tile factory, upon certain rentals and royalties to be paid quarterly, and upon other conditions. Fred H. Sammis took possession of the lands under the lease, and began the erection of buildings and purchase and installment of machinery with which to run said business. Afterward, on May 15, 1895, he sold Charles Poole a one-third interest in the lease and business, and machinery and tools previously acquired by him, in consideration of five lots in Chicago valued at $6,000, which

Charles Poole caused to be conveyed to F. H. Sammis; and F. H. Sammis and Charles Poole by written articles formed a partnership in the ownership of said property and in the business of taking out and selling gravel and making and selling tile.    F. H. Sammis was to own a two-thirds interest and Charles Poole a one-third interest in the property and business.    The firm name was F. H. Sammis & Co.    Among other things they agreed that neither partner should merge the copartnership into a corporation or form a corporation or stock company therefrom without the written consent of his copartner; nor should either partner sell his interest in the copartnership without first consulting the other partner and giving the other partner a reasonable offer in writing to buy or sell.    Charles Poole lived in New York and he and F. H. Sammis never met.    Charles Poole gave his brother, James Poole, a power of attorney to represent and act for him in all matters relating to said firm and business, and James did so act, giving his time exclusively to the business of the firm and performing the services which, by the contract, devolved upon Charles.    The firm entered upon the business for which it was organized.

Some five or six months thereafter Fred H. Sammis and his brother, E. Payson Sammis, excluded Charles and James Poole from the business and the property, and assumed to be the exclusive owners thereof, and with their brother-in-law, Charles H. Betebenner, they went through the form of organizing a corporation by the name, Sammis Mosaic Tile and Gravel Company.    They subscribed for all the capital stock of said alleged corporation, F. H. Sammis taking one-half thereof, E. P. Sammis the other half except one share, and Betebenner one share; elected themselves sole directors and officers, and Fred H. Sammis and E. P. Sammis assigned the property of the firm of F. H. Sammis & Co. to the corporation in payment for all said stock except $1,000 thereof, according to the resolution of the board of directors, and except $100 thereof, according to the bill of sale.    The corporation thereafter claimed to be conducting the business at the plant in question, and afterward executed upon

the machinery and other personal property at the plant a chattel mortgage to P. A. Boland, securing notes aggregating $9,000, executed by the corporation to said Boland. Thereafter L. A. Baker & Co. recovered judgment against Fred H. Sammis and E. P. Sammis in the City Court of Elgin, for a debt of the firm of F. H. Sammis & Co., and had execution to the sheriff of Cook county, and it was levied upon the personal property of the firm. Afterward the Home National Bank of Elgin recovered a judgment against the Sammis Mosaic Tile and Gravel Company in the same court, for a debt incurred in the conduct of the business by the alleged corporation, and had a like execution, under which like levy was made.

Charles Poole then began this suit by filing a bill in equity against his partner, Fred H. Sammis, and against the supposed corporation and all other parties then appearing to be in interest, including said execution creditors and Boland. The purpose of the bill was to set aside all acts of said corporation and its mortgage to Boland, to settle the partnership affairs and accounts, preserve the partnership property, obtain a receiver who should sell the partnership property and collect the partnership accounts, and to determine all conflicting claims to said partnership property and liens thereon. Upon this bill an injunction was issued and served. On the same day that said bill of complaint was filed, Charles W. Sammis, the father of F. H. and E. P. Sammis, claiming to be the owner of the notes secured by the Boland chattel mortgage, replevied from the sheriff of Cook county the machinery and other property covered by said chattel mortgage, which was either all or a part of the property levied upon by said sheriff under said two executions; and upon receiving said property from the coroner, who executed the writ of replevin, Charles W. Sammis placed it in charge of his son-in-law, Charles H. Betebenner, as custodian. A few days later Charles Poole filed a supplemental bill, bringing into the suit Charles W. Sammis, alleging that the latter claimed to own the Boland chattel mortgage, and further attacking the same for fraud, want

of consideration, want of power to execute it, etc.; praying that it be declared illegal and void, and that Charles W. Sammis be enjoined from selling said property and be required to deliver it to the receiver appointed in such chancery cause. To these pleadings L. A. Baker & Co. and the Home National Bank filed answers, and each filed a cross-bill. Each of these cross-bills attacked the good faith, validity and consideration of said chattel mortgage. There were various demurrers, answers, exceptions and replications, to which we deem it not necessary to refer specially. Some of the allegations of the cross-bills were of statements made by F. H. or E. P. Sammis, which would not bind Charles W. Sammis if he was at such times the *bona fide* owner of the Boland chattel mortgage and notes secured thereby. But F. H. and E. P. Sammis were also defendants, and these statements tended to show them engaged in efforts to deceive and defraud, and the allegations were entitled to stand in the cross-bills as against them. Moreover it was charged and afterward proved that at the time of these statements F. H. Sammis was in possession of said notes and Boland chattel mortgage, and that Charles W. Sammis was not then their owner, and had never seen or heard of them. On the whole we find no serious error in the rulings of the court below on the several demurrers and exceptions to the pleadings.

Soon after the bill was filed, W. F. Hunter was appointed receiver of the property involved in the suit. A few days after the filing of the supplemental bill there was a meeting of the various parties interested in the suit and property, and a stipulation was prepared and signed by some of the parties, and assented to by others. The stipulation provided that C. W. Sammis was to turn over to the receiver the property covered by the chattel mortgage, reserving the right to claim priority of his lien over other creditors; that the other lien creditors should do the same without prejudice to their liens; that the lien creditors (other than Sammis) should furnish the receiver not exceeding $5,000 to run the plant, and that said sum should be paid from the

proceeds of the business or sale of the property, and if the creditors could not be paid from the proceeds derived from running the business under the receiver, then the property and plant were to be sold by the receiver, a separate account being kept of the proceeds of the sale of the mortgaged property; that the court should determine the validity and priority of the mortgage lien, and to the extent the mortgage should be held valid and of priority, the proceeds of the sale of the mortgaged property should be paid thereon; and the balance of the liens to be paid in the order of their priority as determined by the court; the common creditors to be paid out of the balance of the proceeds, the validity and priority of the respective liens to be determined by a final decree. Thereupon Betebenner turned over the mortgaged property to the receiver, the execution creditors caused the sheriff to relinquish his possession and right thereto, and the receiver was placed in possession of the entire plant. The Home National Bank advanced $5,000 to the receiver, pursuant to the stipulation, and the receiver operated the plant and completed certain pending contracts. The bank was afterward repaid about $3,000 of said money advanced to the receiver.

Proofs were heard and a decree entered. Charles W. Sammis has sued out this writ of error to reverse that decree, and Thompson and Hunter have assigned cross-errors. The facts and details of the case are numerous and complicated, but it is necessary for us to consider only such matters as are material to the interests of Charles W. Sammis and Thompson and Hunter under the errors assigned.

First. It is urged by some of the defendants in error that the decree in question is not a final decree, and that this writ of error has been prematurely sued out. The decree found that the Boland chattel mortgage and notes secured thereby were each made by the corporation, and were each assigned to Charles W. Sammis, without a good and valuable consideration paid, either for the making or the assignment thereof, and that said notes and chattel mortgage were made and assigned to hinder and delay the cross-

complainants and other creditors in this case from reaching the property covered thereby to satisfy their respective claims. The decree directed that the property described in the chattel mortgage be divested and freed from all liens in respect thereof, and that no part of the proceeds arising from the sale thereof by the receiver should be applied upon the indebtedness or the notes which said mortgage purports to secure. Charles W. Sammis had no interest in this case or in the property in controversy except by virtue of said chattel mortgage and notes. This decree, therefore, was final and terminated the controversy so far as Charles W. Sammis was concerned. The decree further directed the sale of all the property of the firm; that the bank be first repaid the rest of its advance to the receiver; that the receiver next pay the judgment of L. A. Baker & Co., and next pay the judgment of the Home National Bank, and next pay Thompson and Hunter all rent and royalties which had accrued to them under said lease up to the date of the appointment of the receiver, which was March 12, 1896. The decree further directed that before the receiver should make said payments the master should state an account and report the balance remaining unpaid to the bank upon its said advance to the receiver, the sums due on the judgments of L. A. Baker & Co. and the Home National Bank, respectively, and the sums due Thompson and Hunter for rents and royalties accruing prior to the appointment of the receiver; the amount of the indebtedness owing to the other creditors, both by the firm of F. H. Sammis & Co. and by the Sammis Mosaic Tile and Gravel Company, respectively, and whether due for materials and machinery, tools and labor put upon the premises; the amount due to the employes, and classed as labor claims, at the time the bill was filed, and how much has since been paid thereon and by whom; and the amount of money put into said business by each of the parties composing the firm of F. H. Sammis & Co., and the amount received by each therefrom. By this decree not only were the rights of Charles W. Sammis determined, but also the right to a lien and the order

of the liens of all who were entitled to priority of payment. The precise amounts due them were yet to be determined by the computation by the master.   The amount advanced to the receiver was $5,000, and the proof showed about $3,000 had been repaid.   The dates and amounts of the two judgments under which execution liens had been obtained, were found by the decree.   The lease gave Thompson and Hunter a minimum rent and royalty of $125 each quarter, and it is evident not enough business was done to entitle them to more, and the decree finds nothing had been paid from the date of the lease to the appointment of the receiver.   It was a mere matter of computation to ascertain the amount of all valid liens upon the property.   The decree found the property was not sufficient in value to pay these liens, and therefore found there would be nothing for the common creditors.   The decree therefore provided how all the assets should be distributed after sale by the receiver and a computation by the master.   The decree left nothing material undisposed of except the settlement of the financial relations of Fred H. Sammis, E. P. Sammis and Charles Poole with each other after the assets should be distributed to the lien creditors.   Moreover, the cross-bills, not fully abstracted, contain sufficient allegations of fact and prayers for relief to support the decree.   As the filing of a cross-bill does not necessarily stay the hearing upon the original bill (Phillips v. Edsall, 127 Ill. 535), the converse seems equally sound that the hearing of the cross-bill should not necessarily be stayed by the fact that all features of the original bill are not ready for final disposition.   These cross-bills were filed by lien creditors to set aside the chattel mortgage, and to have the property sold and the other liens paid in their proper order.   The creditors had a right to this relief without waiting for a settlement of the accounts between the partners.   We hold that the decree was final and may be reviewed on error.

Second.   Charles W. Sammis claims he is not bound by the stipulation above referred to.   As to him, the signature was " C. W. Sammis, by Charles H. Betebenner, his agent."

Betebenner was then in charge and possession of the property covered by the chattel mortgage, as the agent of Charles W. Sammis, and was the son-in-law of the latter. Betebenner attended the meeting at which the arrangement was devised for having the plant run by the receiver, and took part in the negotiations leading up to the preparation of the stipulation, and signed the same in the name of his principal. Thereupon Betebenner turned over to the receiver the property covered by the chattel mortgage. Charles W. Sammis knew of these acts almost immediately afterward. He did not repudiate them, nor did he seek by the action of the court, or in any other manner, to procure the return of the property to his custody and possession. The stipulation preserved the priority of his lien and all his rights under the chattel mortgage, as they might afterward be determined, and submitted them to the determination of the court. We are of opinion that his assent to the stipulation and to the acts of his agent in signing it and in turning over the property is clearly implied from his silence and from his acts appearing in this record.

Third. Long after this stipulation was signed and the mortgaged chattels were delivered to the receiver, a judgment by default was rendered in favor of Charles W. Sammis in his replevin suit brought in Cook county against the sheriff who held them under the executions already referred to. Charles W. Sammis now claims that judgment in his favor is a bar to any attack on his chattel mortgage in this case. This position is not well taken. The stipulation to which we have referred is entitled in this cause, and in a number of places it clearly and expressly commits to the Circuit Court of Kane County in this cause the determination of the validity and priority of the liens of the respective parties and the validity and priority of this mortgage. The judgment in replevin was taken in violation of this stipulation and without notice to any of the parties who are now sought to be affected and bound thereby. We are of opinion that Charles W. Sammis, after either entering into said stipulation by his agent, Betebenner, or agreeing

thereto by his subsequent silence and other acts, could not deprive the Circuit Court of the jurisdiction thus conferred upon it by taking judgment in said replevin suit in Cook county.    By the pleadings in this cause, as well as by the stipulation, the validity of the Boland chattel mortgage was committed to the jurisdiction and decision of the court below.    Moreover, the proof shows that the judgment in the replevin suit was taken without the knowledge of Charles W. Sammis, and by an attorney whom he had not hired.    It is apparent to us from this record that this was done by his sons, F. H. and E. P. Sammis, or one of them, without Charles W. Sammis being at the time aware of what was done.

Fourth.    About August, 1895, F. H. Sammis deeded to Charles W. Sammis the lots Charles Poole had previously caused to be conveyed to him in payment for a one-third interest in the property and business.    F. H. Sammis seems to have conveyed to Charles W. Sammis one lot by one deed, which was in evidence, and the other four lots by another deed, which we do not find in the record.    The consideration named for the one lot is $3,000, and the proof seems to show the consideration for the other four lots was also $3,000, making the total consideration named in the deeds of the lots from F. H. to Charles W. Sammis $6,000. About the same time Charles W. Sammis delivered, either to his sons, F. H. and E. P. Sammis, or to another son, J. Uriah Sammis, a lawyer at Lemars, Iowa, a real estate mortgage for the principal sum of $6,000.    Uriah pledged this mortgage to the First National Bank of Lemars as security for a loan to him of $3,000, and out of that sum paid $1,800 upon a personal debt owed by E. P. Sammis at Lemars, and the balance he sent to E. P. Sammis.    Afterward Uriah sold said real estate mortgage for $6,400, repaid therefrom to the First National Bank of Lemars the loan of $3,000 to Uriah, and sent the rest of the money to E. P. Sammis.    The latter may have used some of this money in the tile and gravel business, but it was not a loan by either Charles W. or J. Uriah or E. P. Sammis to the

firm of F. H. Sammis & Co., nor was any firm obligation asked or given therefor. There is some evidence these lots were deeded to Charles W. Sammis as collateral security for said $6,000 real estate mortgage turned over by Charles W. Sammis to his sons; but there is other evidence from which we conclude it is more probable that this $6,000 real estate mortgage paid F. H. Sammis for the said deeds of five lots to Charles W. Sammis; that Charles W. Sammis traded the real estate mortgage for the lots. On November 7, 1895, Charles W. Sammis sent Fred H. Sammis a draft for $2,500, indorsed to the order of the latter. On January 10, 1896, Charles W. Sammis sent to E. P. Sammis a draft for $400, indorsed to the order of the latter. Each son indorsed and collected his draft. Some of these moneys may have gone into the tile and gravel business, but they were not loans either to the firm of F. H. Sammis & Co., or to the alleged corporation. The use actually made of these several sums is left in much doubt and confusion by the testimony of the several members of the Sammis family. The foregoing transactions seem to be the only money basis for the consideration of $9,000 claimed for the Boland chattel mortgage. The minutes of the proceedings of the Sammis Mosaic Tile and Gravel Company (not recorded in any book, but kept upon loose sheets of paper) at the first meeting of directors of said corporation, held November 23, 1895, at which F. H. and E. P. Sammis made to themselves and Charles H. Betebenner, the other director, the proposition to turn over the entire tile and gravel plant, business and lease, to the corporation in full payment for all but C. H. Betebenner's one share of its capital stock, show that they stated in their proposition that the transfer would be subject to a chattel mortgage upon the property of Fred H. Sammis and E. P. Sammis to Charles W. Sammis, dated November 12, 1895, and securing the payment of $9,000, with six per cent interest. If there ever was such a chattel mortgage it was not given by the firm of F. H. Sammis & Co.; it was never placed on record; Charles W. Sammis never had the mortgage nor any note of that date secured

Sammis v. Poole.

thereby; and though he was present at the meeting at which the proposition was made and accepted, he had never heard of such note and chattel mortgage when he testified in this case. The bill of sale from F. H. and E. P. Sammis to the corporation made no mention of such chattel mortgage.

On February 1, 1896, F. H. Sammis and Charles H. Betebenner, as directors of the Sammis Mosaic Tile and Gravel Company, signed a resolution authorizing the officers of the company to borrow $9,000, to be paid in two years with interest at six per cent per annum, and to execute a chattel mortgage upon the property of the company to secure the same. Acting under this authority Fred H. Sammis, as president, and E. P. Sammis as secretary, of the corporation, and in its name, executed two notes each dated February 1, 1896, one for $5,000, payable in twelve months, and the other for $4,000, payable in eighteen months after date to the order of Phillip A. Boland, and executed the chattel mortgage here drawn in question to secure said notes. The mortgage was acknowledged February 1, and recorded February 3, 1896. Boland was a lawyer and money-loaner at Lemars, Iowa. These papers were sent to J. Uriah Sammis, at Lemars, and presented to Boland, who declined to loan money upon them. Boland then indorsed the notes without recourse, to some other party named in the indorsements, and J. Uriah Sammis returned them to F. H. and E. P. Sammis. They were then offered to a bank in Elgin, which refused to loan money upon them. Charles W. Sammis never advanced any money upon these papers, nor were they ever delivered to him, nor did he ever loan any money to the firm of F. H. Sammis & Co., or to the corporation. His transactions had been wholly with one or more of his sons personally. It is clear from the testimony of Charles W. Sammis that he has no clear recollection of having seen or heard of these Boland notes and chattel mortgage till the day the original bill of complaint in this case was filed. On that day, in the office of the attorney for F. H. and E. P. Sammis, in Chicago, the chattel mortgage and these notes

were shown him, and the name of the person to whom Boland had assigned the notes was then (or had been previously) erased from the indorsements and the name Charles W. Sammis substituted, and the replevin suit was then started in his name.    While it is clear that Charles W. Sammis has innocently and honestly advanced large sums of money to his sons, F. H. Sammis and E. P. Sammis, we are satisfied from the evidence in this record that he did not make said advances on the strength of the Boland chattel mortgage and the notes secured thereby, nor on the strength of the alleged previous unrecorded chattel mortgage; that said Boland mortgage and notes were not given for value; that as to Charles Poole and the creditors of the firm of F. H. Sammis & Co. the corporation was a fraud from its inception, and that it could not as against Charles Poole and said creditors give a valid chattel mortgage on this property.    We think it well established by the proof that the mortgage to Boland and the notes secured thereby were without consideration and void; that the assignment thereof to Charles W. Sammis was also without consideration and in fraud of the creditors, and was an effort by F. H. and E. P. Sammis to avoid the final catastrophe then impending, and to which effort Charles W. Sammis was a passive party, and that the decree setting aside said chattel mortgage as a lien upon the property is supported by the evidence in the record.

Fifth.    We come now to the position of Thompson and Hunter.    Their lease to Fred H. Sammis contained the following provision:

" The party of the second part further agrees that in case of default for a period of thirty days of any payment as above named, then and in that case any and all machinery and improvements put into said plant or put on said premises by said party of the second part, shall be forfeited to and become the property of the said Thompson and Hunter as liquidated damages for the non-fulfillment of this agreement."

Thompson and Hunter now claim that as their rents and royalties had not been paid at the time the receiver was

Sammis v. Poole.

appointed, the machinery and improvements aforesaid became their property under the clause of the lease just quoted, and that the court erred in ordering the said property sold and distributed in the manner already described instead of turning the property over to them under said provision. We think it clear that in a court of equity this clause would be held to confer upon Thompson and Hunter nothing more than a right to establish a lien upon said property by seizing it before the interests of other parties attached. Under the broad claim they make in this case, if a single dollar of rent or royalty had remained unpaid when due, the entire machinery and all improvements put upon the property by the tenants would have become forfeited to Thompson and Hunter. No such unreasonable result would be carried into effect by a court of equity. But we are of the opinion they would have no lien under this clause unless they took possession under it before the liens of the other creditors attached. At the time the executions were levied and this bill filed, Thompson and Hunter had never exercised any right the lease gave them to seize the property, and we are of the opinion they had no lien until they did so. Moreover, Hunter accepted an appointment by the court as receiver of this property, and afterward consented to the arrangement embodied in the stipulation, and received possession of this property as receiver, and after doing so could not assert any claim adverse to the receivership. Thompson had been absent in the south, but he returned before this stipulation was drawn, and from the proofs seems to have been the first one to suggest that some such arrangement as that set forth in the stipulation should be made, and he did not at the time object to that arrangement, nor for a long time thereafter. Again, the arrangement set forth in the stipulation was very much for the benefit of Thompson and Hunter, and they received its benefits. Thompson and Hunter were guarantors upon $2,000 of the paper of the firm of F. H. Sammis & Co. Certain contracts of the firm had been assigned to Thompson and Hunter to secure them against this liability. These contracts were

unfinished at the time of the failure.   Thompson and Hunter ascertained no money could be had by them under said contracts till they were completed.   Acting under the stipulation, the receiver proceeded to complete these contracts, and the money therefor was received and applied in payment of said debts guaranteed by Thompson and Hunter, and they were thus relieved from that liability.   It is clear from the evidence that they were not only willing but anxious to have this done.   The decree provides for paying Thompson and Hunter after the bank shall have been paid its advance to the receiver, and after the judgments of L. A. Baker & Co. and the Home National Bank shall have been paid.   The arrangement by which money was advanced to the receiver to enable him to proceed with the business of the firm having been beneficial to Thompson and Hunter, and they having accepted the benefits thereof, they can not now be heard to say that such advance shall not first be repaid.   L. A. Baker & Co. and the Home National Bank, by their judgments and executions and levies thereunder, obtained a lien upon this property at a time when Thompson and Hunter had not attempted to assert or exercise any right that the lease might have afforded them to seize the machinery and improvements placed by the tenant on the leased ground, and we are of opinion that by said judgments and levies said execution creditors acquired liens that were prior to the rights of Thompson and Hunter.   As the decree provides that Thompson and Hunter shall next be paid, we are of the opinion there is nothing of which they can consistently complain.   Thompson and Hunter had some improvements upon the premises at the time they made the lease, and they express the fear that under the general language of the decree the receiver will sell not only the machinery and improvements belonging to F. H. Sammis & Co., but also the improvements belonging to Thompson and Hunter. The decree only provides for selling the property of F. H. Sammis & Co., and that claimed by the Sammis Mosaic Tile and Gravel Company, and contains no warrant for selling any property of Thompson and Hunter.   If the receiver

should assume to sell or offer to sell any property not included within the decree, the court below has power in this cause, on motion or petition by Thompson and Hunter, or any other party aggrieved, to prevent the receiver from meddling with property not involved in the litigation.

We are of opinion that the decree was right so far as relates to Charles W. Sammis and Thompson and Hunter, and it is therefore affirmed.