### CHARLES W. SAMMIS
### v.
### JAMES POOLE et al.

*Opinion filed December 20, 1900.*

1. ESTOPPEL—*when party is bound by stipulation.*   One who has instituted replevin proceedings as chattel mortgagee is bound by a stipulation made by his agent, whereby the property is turned over to a receiver appointed by another court, in other proceedings involving the property, and the question of the validity and priority of the mortgage left to the latter court, where he knows the facts almost immediately but does not repudiate the stipulation nor seek to have the property returned to him; nor can he deprive the latter court of jurisdiction by taking judgment by default in the replevin suit without notice to any of the parties affected thereby.

2. The court reviews the evidence in this case at length, and holds it to be sufficient to sustain the decree setting aside the chattel mortgage in question, upon the ground that the mortgage and notes, and the assignment thereof, were made without consideration and for the purpose of hindering and defrauding creditors.

*Sammis* v. *Poole,* 89 Ill. App. 118, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding.

ERNEST SAUNDERS, (DAVID S. GEER, of counsel,) for appellant.

JOHN A. RUSSELL, and BOTSFORD, WAYNE & BOTSFORD, for appellees.

Per CURIAM: The Appellate Court, by Mr. Justice DIBELL, on the appeal to that court by Charles W. Sammis, who is the only appellant in this court, delivered the opinion which, so far as appellant's interests are concerned, is as follows:

"M. H. Thompson and W. F. Hunter owned lands in Hanover township, in the western part of Cook county, near the city of Elgin, in Kane county. On May 1, 1895, they leased a part of said lands to Fred H. Sammis for a term of years, for use as a gravel pit and tile factory, upon certain rentals and royalties, to be paid quarterly, and upon other conditions. Fred H. Sammis took possession of the lands under the lease and began the erection of buildings and purchased an installment of machinery with which to run said business. Afterwards, on May 15, 1895, he sold Charles Poole a one-third interest in the lease and business and machinery and tools previously acquired by him, in consideration of five lots in Chicago, valued at $6000, which Charles Poole caused to be conveyed to F. H. Sammis, and F. H. Sammis and Charles Poole, by written articles, formed a partnership in the ownership of said property and in the business of taking out and selling gravel and making and selling tile. F. H. Sammis was to own a two-thirds interest and Charles Poole a one-third interest in the property and business. The firm name was F. H. Sammis & Co. Among other things they agreed that neither partner should merge the co-partnership into a corporation, or form a corporation or stock company therefrom, without the written consent of his co-partner; nor should either partner sell his interest in the co-partnership without first consulting the

other partner, and giving the other partner a reasonable offer, in writing, to buy or sell.

"Charles Poole lived in New York, and he and F. H. Sammis had never met. Charles Poole gave his brother, James Poole, a power of attorney to represent and act for him in all matters relating to said firm and business, and James did so act, giving his time exclusively to the business of the firm and performing the services which by the contract devolved upon Charles. The firm entered upon the business for which it was organized. Some five or six months thereafter Fred H. Sammis, and his brother, E. Payson Sammis, excluded Charles and James Poole from the business and the property and assumed to be the exclusive owners thereof, and, with their brother-in-law, Charles H. Betebenner, they went through the form of organizing a corporation by the name Sammis Mosaic Tile and Gravel Company. They subscribed for all the capital stock of said alleged corporation, F. H. Sammis taking one-half thereof, E. P. Sammis the other half, except one share, and Betebenner one share; elected themselves sole directors and officers, and Fred H. Sammis and E. P. Sammis assigned the property of the firm of F. H. Sammis & Co. to the corporation in payment for all said stock except $1000 thereof, according to the resolution of the board of directors, and except $100 thereof according to the bill of sale.

"The corporation thereafter claimed to be conducting the business at the plant in question, and afterwards executed upon the machinery and other personal property at the plant a chattel mortgage to P. A. Boland, securing notes aggregating $9000, executed by the corporation to said Boland. Thereafter L. A. Baker & Co. recovered judgment against Fred H. Sammis and E. P. Sammis in the city court of Elgin, for a debt of the firm of F. H. Sammis & Co., and had execution issued to the sheriff of Cook county, and it was levied upon the personal property of the firm. Afterwards the Home Na-

tional Bank of Elgin recovered a judgment against the Sammis Mosaic Tile and Gravel Company in the same court, for a debt incurred in the conduct of the business by the alleged corporation, and had a like execution, under which like levy was made.

"Charles Poole then began this suit by filing a bill in equity against his partner, Fred H. Sammis, and against the supposed corporation and all other parties then appearing to be in interest, including said execution creditors and Boland. The purpose of the bill was to set aside all acts of said corporation and its mortgage to Boland; to settle the partnership affairs and accounts; preserve the partnership property; obtain a receiver, who should sell the partnership property and collect the partnership accounts, and to determine all conflicting claims to said partnership property and liens thereon. Upon this bill an injunction was issued and served. On the same day that said bill of complaint was filed, Charles W. Sammis, the father of F. H. and E. P. Sammis, claiming to be the owner of the notes secured by the Boland chattel mortgage, replevied from the sheriff of Cook county the machinery and other property covered by said chattel mortgage, which was either all or a part of the property levied upon by the said sheriff under said two executions, and upon receiving said property from the coroner, who executed the writ of replevin, Charles W. Sammis placed it in charge of his son-in-law, Charles H. Betebenner, as custodian. A few days later Charles Poole filed a supplemental bill, bringing into the suit Charles W. Sammis, alleging that the latter claimed to own the Boland chattel mortgage, and further attacking the same for fraud, want of consideration, want of power to execute it, etc.; praying that it be declared illegal and void, and that Charles W. Sammis be enjoined from selling said property and be required to deliver it to the receiver appointed in such chancery cause. To these pleadings L. A. Baker & Co. and the Home National Bank

filed answers, and each filed a cross-bill. Each of these cross-bills attacked the good faith, validity and consideration of said chattel mortgage. There were various demurrers, answers, exceptions and replications, to which we deem it not necessary to refer specially.

"Some of the allegations of the cross-bills were of statements made by F. H. or E. P. Sammis, which would not bind Charles W. Sammis if he was at such times the *bona fide* owner of the Boland chattel mortgage and notes secured thereby. But F. H. and E. P. Sammis were also defendants, and these statements tended to show them engaged in efforts to deceive and defraud, and the allegations were entitled to stand in the cross-bills as against them. Moreover, it was charged, and afterward proved, that at the time of these statements F. H. Sammis was in possession of said notes and Boland chattel mortgage, and that Charles W. Sammis was not then their owner and had never seen or heard of them. On the whole, we find no serious error in the rulings of the court below on the several demurrers and exceptions to the pleadings.

"Soon after the bill was filed, W. F. Hunter was appointed receiver of the property involved in the suit. A few days after the filing of the supplemental bill there was a meeting of the various parties interested in the suit and property, and a stipulation was prepared and signed by some of the parties and assented to by others. The stipulation provided that C. W. Sammis was to turn over to the receiver the property covered by the chattel mortgage, reserving the right to claim priority of his lien over other creditors; that the other lien creditors should do the same without prejudice to their liens; that the lien creditors (other than Sammis) should furnish the receiver not exceeding $5000 to run the plant, and that said sum should be paid from the proceeds of the business or sale of the property, and if the creditors could not be paid from the proceeds derived from running the business under the receiver, then the property and plant were to be

sold by the receiver, a separate account being kept of the proceeds of the sale of the mortgaged property; that the court should determine the validity and priority of the mortgage lien, and to the extent the mortgage should be held valid and of priority the proceeds of the sale of the mortgaged property should be paid thereon, and the balance of the liens to be paid in the order of their priority, as determined by the court; the common creditors to be paid out of the balance of the proceeds; the validity and priority of the respective liens to be determined by a final decree. Thereupon, Betebenner turned over the mortgaged property to the receiver, the execution creditors caused the sheriff to relinquish his possession and right thereto, and the receiver was placed in possession of the entire plant. The Home National Bank advanced $5000 to the receiver, pursuant to the stipulation, and the receiver operated the plant and completed certain pending contracts. The bank was afterwards re-paid about $3000 of said money advanced the receiver.

"Proofs were heard and a decree entered. Charles W. Sammis has sued out this writ of error to reverse that decree and Thompson and Hunter have assigned cross-errors. The facts and details of the case are numerous and complicated, but it is necessary for us to consider only such matters as are material to the interests of Charles W. Sammis and Thompson and Hunter under the errors assigned. 　*　*　*

"Charles W. Sammis claims he is not bound by the stipulation above referred to. As to him the signature was 'C. W. Sammis, by Chas. H. Betebenner, his agent.' Betebenner was then in charge and possession of the property covered by the chattel mortgage, as the agent of Charles W. Sammis, and was the son-in-law of the latter. Betebenner attended the meeting at which the arrangement was devised for having the plant run by the receiver, and took part in the negotiations leading up to the preparation of the stipulation and signed the

188—26

same in the name of his principal. Thereupon Betebenner turned over to the receiver the property covered by the chattel mortgage. Charles W. Sammis knew of these acts almost immediately afterwards. He did not repudiate them, nor did he seek by the action of the court, or in any other manner, to procure the return of the property to his custody and possession. The stipulation preserved the priority of his lien and all his rights under the chattel mortgage, as they might afterwards be determined, and submitted them to the determination of the court. We are of opinion that his assent to the stipulation, and to the acts of his agent in signing it and turning over the property, is clearly implied from his silence and from his acts appearing in this record.

"Long after this stipulation was signed and the mortgaged chattels were delivered to the receiver a judgment by default was rendered in favor of Charles W. Sammis in his replevin suit brought in Cook county against the sheriff, who held them under the executions already referred to. Charles W. Sammis now claims that judgment in his favor is a bar to any attack on his chattel mortgage in this case. This position is not well taken. The stipulation to which we have referred is entitled in this cause, and in a number of places it clearly and expressly commits to the circuit court of Kane county in this cause the determination of the validity and priority of the liens of the respective parties and the validity and priority of this mortgage. The judgment in replevin was taken in violation of this stipulation, 'and without notice to any of the parties who are now sought to be affected and bound thereby. We are of the opinion that Charles W. Sammis, after either entering into said stipulation by his agent, Betebenner, or agreeing thereto by his subsequent silence and other acts, could not deprive the circuit court of the jurisdiction thus conferred upon it, by taking judgment in said replevin suit in Cook county. By the pleadings in this cause, as well as by the stipu-

lation, the validity of the Boland chattel mortgage was committed to the jurisdiction and decision of the court below. Moreover, the proof shows that the judgment in the replevin suit was taken without the knowledge of Charles W. Sammis and by an attorney whom he had not hired. It is apparent to us from this record that this was done by his sons F. H. and E. P. Sammis, or one of them, without Charles W. Sammis being at the time aware of what was done.

"About August, 1895, F. H. Sammis deeded to Charles W. Sammis the lots Charles Poole had previously caused to be conveyed to him in payment for a one-third interest in the property and business. F. H. Sammis seems to have conveyed to Charles W. Sammis one lot by one deed, which was in evidence, and the other four lots by another deed which we do not find in the record. The consideration named for the one lot is $3000, and the proof seems to show the consideration for the other four lots was also $3000, making the total consideration named in the deeds of the lots from F. H. to Charles W. Sammis $6000. About the same time Charles W. Sammis delivered either to his sons F. H. and E. P. Sammis, or to another son, J. Uriah Sammis, a lawyer at Lemars, Iowa, a real estate mortgage for the principal sum of $6000. Uriah pledged this mortgage to the First National Bank of Lemars as security for a loan to him of $3000, and out of that sum paid $1800 upon a personal debt owed by E. P. Sammis at Lemars and the balance he sent to E. P. Sammis. Afterwards, Uriah sold said real estate mortgage for $6400, re-paid therefrom to the First National Bank of Lemars the loan of $3000 to Uriah and sent the rest of the money to E. P. Sammis. The latter may have used some of this money in the tile and gravel business, but it was not a loan by either Charles W. or J. Uriah or E. P. Sammis to the firm of F. H. Sammis & Co., nor was any firm obligation asked or given therefor. There is some evidence these lots were deeded to Charles

W. Sammis as collateral security for said $6000 real estate mortgage turned over by Charles W. Sammis to his sons, but there is other evidence from which we conclude it is more probable that this $6000 real estate mortgage paid F. H. Sammis for said deeds of five lots to Charles W. Sammis; that Charles W. Sammis traded the real estate mortgage for the lots. On November 7, 1895, Charles W. Sammis sent Fred H. Sammis a draft for $2500, endorsed to the order of the latter. On January 10, 1896, Charles W. Sammis sent to E. P. Sammis a draft for $400, endorsed to the order of the latter. Each son endorsed and collected his draft. Some of these moneys may have gone into the tile and gravel business, but they were not loans either to the firm of F. H. Sammis & Co. or to the alleged corporation. The use actually made of these several sums is left in much doubt and confusion by the testimony of the several members of the Sammis family.

"The foregoing transactions seem to be the only money basis for the consideration of $9000 claimed for the Boland chattel mortgage. The minutes of the proceedings of the Sammis Mosaic Tile and Gravel Company, (not recorded in any book, but kept upon loose sheets of paper,) at the first meeting of the directors of said corporation, held November 23, 1895, at which F. H. and E. P. Sammis made to themselves and Charles H. Betebenner, the other director, the proposition to turn over the entire tile and gravel plant, business and lease to the corporation in full payment for all but C. H. Betebenner's one share of its capital stock, show that they stated in their proposition that the transfer would be subject to a chattel mortgage upon the property of Fred H. Sammis and E. P. Sammis to Charles W. Sammis, dated November 12, 1895, and securing the payment of $9000, with six per cent interest. If there ever was such a chattel mortgage it was not given by the firm of F. H. Sammis & Co. It was never placed on record. Charles W. Sammis never had the mort-

gage nor any note of that date secured thereby, and though he was present at the meeting at which the proposition was made and accepted, he had never heard of such note and chattel mortgage when he testified in this case. The bill of sale from F. H. and E. P. Sammis to the corporation made no mention of such chattel mortgage.

"On February 1, 1896, F. H. Sammis and Charles H. Betebenner, as directors of the Sammis Mosaic Tile and Gravel Company, signed a resolution authorizing the officers of the company to borrow $9000, to be paid in two years, with interest at six per cent per annum, and to execute a chattel mortgage upon the property of the company to secure the same. Acting under this authority, Fred H. Sammis as president and E. P. Sammis as secretary of the corporation, and in its name, executed two notes, each dated February 1, 1896, one for $5000, payable in twelve months, and the other for $4000, payable in eighteen months after date, to the order of Philip A. Boland, and executed the chattel mortgage here drawn in question to secure said notes. The mortgage was acknowledged February 1 and recorded February 3, 1896. Boland was a lawyer and money loaner at Lemars, Iowa. These papers were sent to J. Uriah Sammis at Lemars and presented to Boland, who declined to loan money upon them. Boland then endorsed the notes without recourse to some other party named in the endorsements, and J. Uriah Sammis returned them to F. H. and E. P. Sammis. They were then offered to a bank in Elgin, which refused to loan money on them. Charles W. Sammis never advanced any money upon these papers, nor were they ever delivered to him, nor did he ever loan any money to the firm of F. H. Sammis & Co. or to the corporation. His transactions had been wholly with one or more of his sons, personally. It is clear from the testimony of Charles W. Sammis that he has no clear recollection of having seen or heard of these Boland notes and chattel mortgage till the day the original bill of

complaint in this case was filed. On that day, in the office of the attorney for F. H. and E. P. Sammis in Chicago, the chattel mortgage and these notes were shown him, and the name of the person to whom Boland had assigned the notes was then (or had been previously) erased from the endorsements and the name Charles W. Sammis substituted, and the replevin suit was then started in his name.

"While it is clear that Charles W. Sammis has innocently and honestly advanced large sums of money to his sons F. H. Sammis and E. P. Sammis, we are satisfied from the evidence in this record that he did not make said advances on the strength of the Boland chattel mortgage and the notes secured thereby, nor on the strength of the alleged previous unrecorded chattel mortgage; that the said Boland mortgage and notes were not given for value; that as to Charles Poole and the creditors of the firm of F. H. Sammis & Co. the corporation was a fraud from its inception, and that it could not, as against Charles Poole and said creditors, give a valid chattel mortgage on this property. We think it well established by the proof that the mortgage to Boland, and the notes secured thereby, were without consideration and void; that the assignment thereof to Charles W. Sammis was also without consideration and in fraud of the creditors, and was an effort by F. H. and E. P. Sammis to avoid the final catastrophe then impending, and to which effort Charles W. Sammis was a passive party, and that the decree setting aside said chattel mortgage as a lien upon the property is supported by the evidence in the record."

After a careful consideration of this case we have reached the same conclusion as that arrived at by the Appellate Court, and we fully concur in the reasons stated in the opinion of that court for the decision affirming the decree rendered below. That opinion will therefore be adopted as the opinion of this court, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*