RAILROAD SUPPLY CO. v. HART STEEL CO. et al.

(Circuit Court, N. D. Illinois, E. D.   December 28, 1911.)

No. 29,294.

PATENTS (§ 328*)—INFRINGEMENT—TIE-PLATES.

The Wolhaupter patents, No. 538,809, claim 8, No. 691,322, claims 1, 2, and 3, No. 721,644, claims 7 and 9, each for a railroad tie-plate, narrowly construed, as they must be in view of the prior art, held not infringed.

In Equity.  Suit by the Railroad Supply Company against the Hart Steel Company and Guilford S. Wood.  On final hearing.  Decree for defendants.

Taylor E. Brown (C. C. Linthicum, C. Clarence Poole, and Clarence E. Mehlhope, of counsel), for complainant.

Frank F. Reed, Edward S. Rogers, and James Negley Cooke (Frederick P. Fish, of counsel), for defendants.

KOHLSAAT, Circuit Judge.  Complainant seeks herein to restrain infringement of: (1) Claim 8 of patent No. 538,809, granted

May 7, 1895, to B. Wolhaupter; (2) claims 1, 2, and 3 of patent No. 691,322, granted January 14, 1902, to same; and (3) claims 7 and 9 of patent No. 721,644, granted February 24, 1903, to same, all for railway tie-plates. They read as follows, viz.:

"8. A railway tie-plate formed on the under side with devices more or less sharpened, adapted to penetrate and engage the tie and on its upper side with a series of flanges on which the rail rests, substantially as described."

"1. A railway tie-plate provided on its upper side with one or more flanges on which the rail may rest or by which it is directly sustained and on the under side with one or more tie-engaging flanges, extending parallel with the upper flanges and directly beneath the latter, substantially as described.

"2. A railway tie-plate provided on its upper side with one or more flanges on which the rail may rest and by which it is directly sustained and on the under side with one or more tie-engaging flanges extending parallel with the upper flanges and directly beneath the latter and sharpened to permit them to readily enter the tie, substantially as described.

"3. A railway tie-plate provided on its upper side with one or more flanges on which the rail may rest and by which it is directly sustained, on the under side with one or more sharpened tie-engaging flanges extending parallel with the upper flanges and directly beneath the latter, and on the upper side with an additional flange or flanges extending above the plane of the rail-sustaining flanges and adapted to receive the lateral thrust of the rail, substantially as described."

"7. A tie-plate provided in its rail supporting surface with transverse grooves or channels, and at one margin of said supporting surface with a transverse rail abutting shoulder."

"9. A tie-plate provided in its rail supporting surface with transverse grooves or channels, reaching to the edge of the plate, and at one margin of said surface a transverse rail abutting shoulder."

In substance the subject-matters of the said several patents, so far as here involved, are as follows, viz.:

Claim 8, aforesaid, covers a tie-plate with more or less sharpened depending tie-engaging projections on its under side to supplement the spikes, and having on its upper face a series of flanges on which the rail rests.

Claims 1, 2, and 3, aforesaid, call for a tie-plate of the same general construction as that of said claim 8, having on its lower or under side tie-engaging projections parallel and in perpendicular alignment with the flanges in its upper surface, i. e., transverse the rail, and having an additional flange on one or both outside edges of its upper face, extending above the other flanges and parallel therewith, and adapted to receive and resist the lateral thrust of the rail.

Said claims 7 and 9 call for a tie-plate having grooves in its upper surface transverse the tie and extending to the outer edge of the plate, running parallel to the rail and provided at one margin of its upper surface with a rail-abutting shoulder extending parallel to the rail.

Defendant is charged with the appropriation of the substance of each of the foregoing claims in the construction of the combination constituting its tie-plate, having the corrugated top surface and the more or less sharpened tie-engaging flanges of claim 8, the alignment of the upper and lower flanges as in claims 1, 2, and 3, and the rail-abutting transverse shoulder of claims 7 and 9. Each of these elements, defendant insists, is found in the prior art. The defenses re-

lied on are want of patentable novelty in view of the state of the art, and noninfringement.

It is contended that the corrugated rail-supporting surface of the device of claim 8 presents a much longer lived tie-plate than does the flat surfaced tie-plate which preceded it. That the furrowed surface had some advantage over the flat rail supporting face, seems to be fairly well established. It undertakes to make provision for the elimination of moisture, which corrodes, and sand and other gritty substances, which abrade the tie-plate and tie, so that, for the purposes of this suit, the utility of such a device must be conceded. The under tie-engaging flanges prevent movement of the plate upon the tie, and are concededly useful. Were further evidence of these facts necessary, it may be found in the disclosure of the record with regard to the use to which the device of the patents in suit has attained.

As a matter of first impression, it would seem as though the features of the claims alleged to be novel could be little more than the result of mechanical skill—something that the railroad building art must suggest. They must, however, be viewed in the light of the art as it stood at the time of the several alleged inventions in suit.

In the early days of railroading, engines and cars were light. Rails were laid upon and spiked into the ties or into wooden plates. As the weight and speed of trains and rail manufacturing facilities increased, it was found that this was not a safe or economical means for holding the rails in place. Flat plates of iron or steel construction came into use. It is estimated that at the present day a first-class engine weighs more than ten times as much as did one of the first commercial engines. The great increase in traffic demanded increase in the carrying capacity of the cars. This in turn demanded the strengthening of the tracks. To this end, inventors have been active in devising, among numerous other track strengthening devices, tie-plates which should meet the demands of increased strain upon the tracks and prevent as far as possible the destruction of railroad ties; the demand for the latter being such as to threaten the supply. Thus it was that the pressure for improvement in tie-plates became very great.

The specification in patent No. 538,809, aforesaid (lines 13 to 49 inc., p. 1), reads as follows, viz.:

"Heretofore in the use of railway tie-plates two general styles of plates have been employed. The plates were first put into use without top flanges, that is, flanges on the top of the plate against which the rail flange could abut and the plate thereby be utilized to prevent the lateral movement of the rail and consequent widening of the gauge; but in the use of these smooth top plates it was found that the constant thrusts of the rail laterally tended to shear the spike, and the latter had to be frequently renewed. To relieve the spike and obviate this item of renewals the plate was provided with a top ridge or flange against which the rail flange could bear; the flanges on the under side of the plate which engaged the tie supposedly holding the plate against any movement along the tie, and the plate thereby relieving the spikes from the shearing action of the rail caused by its lateral thrust. But in the use of these plates with top flanges it has been found that the lateral thrust of the rail has caused the flanges on the under side of the plate to break or compress the wood fibers and allow the plate to creep along the tie longitudinally thereof. When the plate has once moved, it has been practically impossible to again hold the top flange

against the rail flange after the rail has been returned to its original and proper position, since the under flanges have no wood to abut against; the result being that, even with the top flange on the plate, the spike has had to take the thrust of the rail after the plate has been in use a short time, thus rendering useless this top flange and soon shearing the spike."

From the record it appears that, as to said claim 8, the prior art is, substantially, to be found in the following patents:

The railway chair of Wells patent, No. 203,570, granted May 14, 1878, disclosing a device having an underneath rectangular shaped projection or flange intended to be sunk in a channel cut into the tie and upper flanges upon which the rail rests, the grooves of which serve to lighten the device and afford protection from grit and moisture. This chair is meant to hold the ends of the rails. It extends over several ties. Complainant insists the chair is not in the tie-plate art. So far, however, as it makes public features bearing upon claims in suit, aforesaid, it will be proper to consider it.

Hudson patent, No. 142,020, granted August 19, 1873, which discloses a tie-plate with a channel on its upper face arranged to receive a flange in the bottom of the rail, shoulders on the outer edge of the upper face, embracing the rail-base on both edges and a rectangular projection or flange on its under side directly beneath its upper channel, designed to prevent shearing of the spikes and creeping of the plate.

Gould patent, No. 280,030, granted June 26, 1883, for railroad plate provided with two or more V-shaped metal flanges or beads in its under side, which will readily be imbedded in the tie, and which has one or more longitudinal grooves on its top or face surface to receive corresponding ribs or flanges on the bottom of the rail and on one edge a shoulder. A rubber cushion is provided on the under side, between the grooves or flanges.

Dunham patent, No. 469,386, granted February 23, 1892, which shows a corrugated tie-plate, both sides or faces being corrugations, thus providing for protection against moisture and sand.

Goldie patent, No. 485,030, granted October 25, 1892, for a tie-plate. This device has a slightly concave top face centrally located and a convex under face. The base of the rail rests practically on the plain surface at the sides of the depression, leaving an opening under and parallel to the rail. There are more or less sharpened flanges on the under side which penetrate the rail. A shoulder extending across the plate near one edge of the top surface resists side thrust. While not mentioned in the patent, it is evident that this tie-plate will take care of moisture and grit.

Servis patent, No. 249,407, granted November 8, 1881, reissue 10,-302, reissued April 3, 1883, and No. 294,816, granted March 11, 1884, for a wear plate, all show tie-plates having flanges on their under faces and flat upper faces.

In Reece patent, No. 494,692, granted April 4, 1893, is shown a tie-plate which has more or less sharpened flanges on its under face and portions upon its upper face equivalent to raised ribs upon which the rail rests and also rail-abutting shoulders. The portions upon which

the rail rests are produced by cutting out the metal from a plane top face, so as to leave ribs or strips of metal with openings through to the tie, as in fig. 2 of the patent.

Holmes patent No. 495,807, granted April 18, 1893, shows substantially the same tie-plate without the openings.

The patent to Churchward, granted November 7, 1893, and numbered 508,086, calls for a wear plate for railroad ties, having a flat rail supporting surface flanked by two transversely ranging rail-abutting shoulders and an under surface provided with transversely ranging and sharpened, tie-engaging ribs or flanges.

Worthington patent, No. 506,963, granted October 17, 1893, for method of making railroad tie-plates, shows a plate formed "with longitudinal ribs on both of its faces and then planing or cutting away parallel sections of the ribs upon one face of the plate to form the seat and abutments for the foot flange of the rail." This device, as first prepared and before cutting away, is the device of claim 8 and claims 1 and 2 aforesaid.

Avery patent, No. 574,773, granted January 5, 1897, for a railway tie-plate, covers a device which has rail-supporting ribs on its upper face connected near their ends by transverse raised portions or narrow ribs, thereby forming a trough between each set of supporting ribs. At the bottom of this trough, and adjoining the inner face of the transverse end ribs, a tongue of metal is cut and turned down, thereby constituting downward projecting teeth, which engage the tie much as shown in Wolhaupter patent, No. 579,509, fig. 2, granted March 23, 1897. When the tie-plates are cast, the tie-engaging "tongues are cast integral with the plate." One object of this construction, it is stated, is to prevent the entrance of water and dirt between the plate and the tie. The troughs above referred to must be completely covered by the bottom flange of the rail in order to exclude moisture and grit. At line 41, p. 2, it is said:

"A boss or lug E, or two lugs, may be formed on the top of one or more of the ribs to serve as abutments for the rail flange and prevent its lateral movement. These lugs may be pressed upward if the plate is made of wrought metal, or may be cast on, if made of cast metal."

The lugs serve the same purpose as a shoulder.

Various other patents, such as Reece patent, No. 488,662, for wear plate; Clark patent, No. 529,854, granted November 27, 1894; Reece patent, No. 541,984, granted July 2, 1895; Churchward patent, No. 492,528, granted February 28, 1893, for a wear plate, having sharpened under flanges and a plain upper face with a shoulder; patent No. 506,963, granted to Worthington for making tie-plates, October 17, 1893; Holmes patent, No. 514,465, granted February 13, 1894, for a tie-plate; patent to Clark, No. 529,854, granted November 27, 1894, for a tie-plate, and others, together with certain publications, disclose devices more or less resembling those in suit.

From the foregoing, it appears that tie-plates having flanged under faces more or less sharpened to engage the tie were old when claim 8 was applied for; also, that devices having flat tops, except a rail-abutting shoulder, and more or less sharpened under flanges, were also

old; that tie-plates having channels and attendant flanges, or projections and shoulders on their upper faces, and rectangular projections or flanges on their under sides, were old.

The device of claim 8 differs from the device of the Dunham patent only in its under flanges being more or less sharpened.

It also appears that tie-plates having upper and lower flanges, both parallel with the rail and those transverse thereto, were old. In the Goldie patent, the depression made in the center of the plate is alleged by the patentee to be for the purpose of receiving the more or less rounded portion of the center of the rail foot or base. Fig. 2 shows a clear opening under the rail base, with the flanges of the base resting on those parts of the tie-plate not included in the concave center but immediately adjacent to and upon both sides of such center depression. The effect of this would be to provide flanges on the upper face of the tie-plate upon which the rail rests. As said above, Goldie lays no claim to this feature of his device. As a witness for complainant he pronounces his device a failure. Inasmuch as his device has gone to the general public by expiration of his patent, his statement cannot prevail as an admission. The space under the rail in fig. 2 would be ample for the collection and removal of moisture and grit from the plate. It is apparent that the bearing rib or section of this tie-plate is above and in vertical alignment with the more or less sharpened flanges on the under face of the plate, as in the second patent in suit; so that if the Goldie depression is equivalent to the channels which produce the rail-bearing flanges of claim 8, then, whether claimed or not by Goldie, Wolhaupter was not the first to discover a "tie-plate formed on the under side with devices, more or less sharpened, adapted to penetrate and engage the tie, and on its upper side with a series of flanges on which the rail rests," substantially as described in the first patent in suit. The alleged object of the device of claim 8 is to secure lightness, cheapness, strength, protection from moisture and grit, and to prevent creeping of the plate. All of these are secured in the Reece patent above set out.

Such being the state of the art, complainant's invention, as disclosed in claim 8, must be limited to the particular form of tie-plate shown in the drawing with only a very limited right to equivalents, if any. Under the state of the art, there could be no novelty in extending the lower flanges parallel with the grain of the tie. Goldie, Dunham, Reece, and others have the same arrangement. Wolhaupter prefers his plate formed into a trussed shape, but does not limit himself to that form. He claims a strong plate, since each point where the rail rests upon the plate is supported and trussed by metal which is more or less on edge instead of on its side, thereby forming for each resting point of the rail two girders $C^7$ joined at the apex by the top flanges $C^4$ where the rail rests.

If the device of claim 8 is to be compared separately with defendants' alleged infringing tie-plate, it is evident that the latter lacks the under side flanges formed so as to give an arch effect or support to the tie-plate. Its under face is flat with V-shaped depending projections in more or less perpendicular alignment with the upper face

raised portion thereof. Its upper flanges, if they may be so termed, run parallel to the rail and transverse the tie as do its under flanges. While those of claim 8 run transverse the rail and parallel to the grain of the tie, other differences are disclosed, so that were the two to be placed in conflict infringement would not be deemed established, in view of the state of the art.

Compared with claims 1, 2, and 3, of patent No. 691,332, it will be seen that the under flanges of defendant are located with respect to the upper rail rests, the same as in Goldie, Reece, and Wolhaupter, provided the upper rail rests may be termed flanges in Reece and Goldie. Defendant's shoulder is that of Goldie, whereas the shoulder device of claims 3 is practically that of Reece. It lacks also the punched out teeth of Wolhaupter as shown in the specification. Were these two devices here in suit alone, infringement could not be decreed in view of the condition of the art at date of patent.

Considering defendant's device in comparison with claims 7 and 9 of patent No. 721,644, it appears that it comes so far as the said claims go within the language thereof. It has the transverse grooves reaching to the edge of the plate on its rail-supporting surface and also the transverse rail-abutting flange. As above stated, the only improvement of claims 7 and 9 deemed necessary to consider here is the rail-abutting shoulder. The language of these claims is broad enough to include any tie-plate having such a shoulder in connection with grooves on its upper face. Patent to the same Wolhaupter, No. 579,509, aforesaid shows substantially this same arrangement of grooves on the upper face of a railroad tie-plate in combination with a shoulder or rail-abutting flange. It is found in Goldie patent aforesaid. If it is to be construed so as to include defendant's tie-plate, it must be held to be invalid. This, however, is not necessary. There seem to be few lines of the inventive art which have been so diligently followed up as the tie-plate. The minutest advances have been recognized by the Patent Office. It is therefore not deemed necessary to hold this third patent invalid, for what it calls for as limited by the prior art.

It is the judgment of the court that defendant's device does not infringe any of the claims in suit in view of the state of the art. The bill will therefore be dismissed for want of equity.