### NATIONAL BRAKE & ELECTRIC CO. v. CHRISTENSEN et al.

(Circuit Court of Appeals, Seventh Circuit. April 29, 1919.)

No. 2163.

1. EQUITY ⬦═422—FINAL DECREE.
      A decree may be final both as to the merits and to the time relation; but, where a chancellor denies a petition for a rehearing, it may be the final judicial action in the case despite an earlier decree on the merits which otherwise was final, the final order bringing forward to the time thereof the original decree on the merits.

2. COURTS ⬦═405(12)—FEDERAL COURTS—FINAL DECREE—"FINAL ORDER."
      The federal procedure is wholly statutory, and, when the statute limited appeals to final decrees, the meaning of "final" becomes a matter of statutory construction, and it is within the province of the court to declare that a "final order" is one that ends the litigation in the trial court, and that the legislative intent was against piecemeal appeals.
      [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Order.]

3. PATENTS ⬦═323, 327—CONCLUSIVENESS—FINALITY OF DECREE.
      Where an alleged infringer was permanently enjoined and an accounting was directed before a master in chancery for past infringement, and on appeal decree was affirmed, the decree, though interlocutory in form, was in its essence a final decree, so that after affirmance and before accounting was had the infringer cannot by petition set up in the Circuit Court of Appeals as res judicata a judgment of another Circuit Court of Appeals in an action brought by the same complainants in another circuit holding the patent invalid.

Application for Order Directing Dismissal of Bill Brought in the District Court of the United States for the Eastern District of Wisconsin.

Application by the National Brake & Electric Company for an order directing dismissal of a bill brought in the United States District Court by Niels A. Christensen and another against petitioner for patent infringement. Application denied.

---

⬦═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John S. Miller, Edward O. Brown, and Charles A. Brown, all of Chicago, Ill., and Thomas B. Kerr, of New York City, for petitioner.

Joseph B. Cotton, of New York City, Louis Quarles, of Milwaukee, Wis., and Wm. R. Rummler, of Chicago, Ill., for respondents.

Before BAKER, MACK, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Respondents sued petitioner in the District Court for the Eastern District of Wisconsin for alleged infringement of patent No. 635,280, issued October 17, 1899, to N. A. Christensen, for a combined pump and motor. On issues joined as to the ultimate rights of the parties, the District Court heard and considered all the evidence each side had to offer respecting the ownership, validity, and infringement of the patent, and thereupon adjudged and decreed that respondents were the owners of a valid patent which was being infringed by structures made, used, and sold by petitioner, that petitioner and its agents be enjoined during the life of the patent from making, using, or selling any combined pump and motor embodying the Christensen improvements, and that an accounting before a named master in chancery be had for past infringements. On appeal to this court that decree was affirmed in 1915. 229 Fed. 564, 144 C. C. A. 24. Ever since our mandate was issued, the cause has been pending in the District Court in Wisconsin on the accounting.

Sometime after the decisions in this circuit, respondents began a suit on the same patent against the Westinghouse Traction Brake Company in the District Court for the Western District of Pennsylvania. That litigation resulted in a decree, entered in 1917, pursuant to the mandate of the Circuit Court of Appeals for the Third Circuit (243 Fed. 901, 156 C. C. A. 413), holding the patent invalid and dismissing the bill for want of equity.

Thereupon petitioner went into the District Court in Wisconsin, and, on representations that it was entitled to the benefit of the Pennsylvania decree as a privy, asked that the Wisconsin decree be vacated and petitioner be granted leave to amend its answer on the merits by setting up the Pennsylvania decree as res adjudicata. That petition was denied.

And now petitioner comes before us in an original proceeding, asking that we recall our mandate, vacate our decree, find that the Pennsylvania decree is res adjudicata in this case, and thereupon direct the vacation of the Wisconsin decree and the dismissal of the bill on the merits.

On the records of the two cases, which are submitted as constituting all the evidence that bears on this motion, respondents dispute petitioner's contentions as to the identity of subject-matter and parties in the two decrees. But at the threshold lies the question of the nature and effect of the Wisconsin decree, affirmed by this court, and we have stated the case only in that aspect.

[1] A decree may be looked at from the point of view of time, and also from that of essence. The former discloses procedural law, mainly statutory appellate procedure; the latter concerns the right of a party who, for instance, on issues joined respecting title to property and exclusive possession or use, has submitted all his proofs

and arguments, afterwards to require the court to ignore its deliberate decree on title and right of possession and to hear again the evidence and arguments on those issues because a supplemental or dependent issue has been reserved for future judicial determination.

If a decree writes "finis" to the litigation, it certainly merits the term "final" in time relation. But even in the time relation of procedure, the last judicial action is not always the matter that is reviewed on appeal. If a chancellor entertains a petition for a rehearing (motion for a new trial), his denial of the petition may be the final judicial action in the case, but his decree on the merits as deduced from the evidence and the law is the matter that is reviewed. The effect of the final order in time is to bring forward to the same time the order on the merits. Brockett v. Brockett, 2 How. 238, 11 L. Ed. 251; Aspen Mining Co. v. Billings, 150 U. S. 31, 14 Sup. Ct. 4, 37 L. Ed. 986; Kingman v. Western Mfg. Co., 170 U. S. 675, 18 Sup. Ct. 786, 42 L. Ed. 1192; Chicago G. W. Rld. Co. v. Basham (March 3, 1919), 249 U. S. 164, 39 Sup. Ct. 213, 63 L. Ed. 534.

[2] Federal appellate procedure is wholly statutory. When the statute limited appeals to "final" decrees, the meaning of "final" was a matter of statutory construction. It was within the province of the court to declare that a "final" order was only the one that ends the litigation in the trial court and that the legislative intent was against "piecemeal" appeals. Barnard v. Gibson, 7 How. 650, 12 L. Ed. 857; Craighead v. Wilson, 18 How. 199, 15 L. Ed. 332; Beebe v. Russell, 19 How. 283, 15 L. Ed. 668; Humiston v. Stainthorp, 2 Wall. 106, 17 L. Ed. 905; Green v. Fisk, 103 U. S. 518, 26 L. Ed. 485; Keystone Co. v. Martin, 132 U. S. 91, 10 Sup. Ct. 32, 33 L. Ed. 275; McGourkey v. Toledo Ry. Co., 146 U. S. 536, 13 Sup. Ct. 170, 36 L. Ed. 1079; Ex parte National Enameling Co., 201 U. S. 156, 26 Sup. Ct. 404, 50 L. Ed. 707; Heike v. United States, 217 U. S. 423, 30 Sup. Ct. 539, 54 L. Ed. 821; Hamilton Shoe Co. v. Wolf Brothers, 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629. In many of these cases the point was stressed that the intermediate order or decree sought to be presented for review, regardless of its essence, was not final for the purposes of appeal within the meaning of the statute. In the Heike Case the court observed:

"It is true that in a certain sense an order concerning a controlling question of law made in a case is, as to that question, final. Many interlocutory * * * orders effectually dispose of some matters in controversy, but that is not the test of finality for the purposes of appeal or writ of error."

If an order that is interlocutory in time effectually disposes of certain issues under the law and the evidence, the effect of the last order that disposes of the remaining issues is the same as the effect of the order denying a motion for a rehearing—it brings forward to the latter date for the purposes of appeal the intermediate order on the merits, unless there is a special statutory provision for an intermediate appeal from the intermediate order in question.

[3] Even in cases of procedural law, where the only question was when the time for taking an appeal was ripe, the manifest inconveniences and hardships from long postponement of a review of a decree,

intermediate in time, but based on a full submission and consideration of the law and the evidence respecting the foundational issues of title and use, led to exceptions in the application of the time rule. In Forgay v. Conrad, 6 How. 201, 12 L. Ed. 404, an assignee in bankruptcy filed a bill to cancel sundry deeds of the bankrupt, to establish the assignee's title and right of possession, and to obtain an accounting of the rents and profits received by the defendants. On a full hearing of the issues of title and right of possession, and of the fact that defendants had been in unlawful possession, the trial court decreed that the complainant was the owner and was entitled at once to exclude the defendants from the property, that the defendants' receipts of rents and profits were unlawful, that the amount thereof be determined in an accounting before a master, and that so much of the bill as related to the accounting be retained for further decree. Plainly the parties were kept in court for determination of an issue within the pleadings. Plainly the decree on title and right of possession was not the "final" decree in time relation. Plainly, in its essence, that decree was final as to the issues then adjudged, for they "could not have been afterwards reconsidered or modified except upon a petition for a rehearing"; and the only question was whether an appeal should then be allowed or only after all issues had been finally disposed of in the trial court. In view of the fact that the assignee in bankruptcy might distribute the proceeds of the sale of the property among the creditors before the accounting issue for rents and profits was finally disposed of, the appeal was permitted to stand. In aid of the "no piecemeal appeals" rule, Mr. Chief Justice Taney condemned the splitting of cases and the rendition of two or more final decrees on the merits and pointed out to the trial courts that after a full hearing of the foundational rights of the parties only an opinion should be given and no executable orders entered until the master's account of profits or damages was in, so that all matters in dispute might be embodied in "one final decree." (But the reasons that underlay that attitude have lost their importance by changes in appellate procedure introduced in the act creating the Circuit Courts of Appeals.) Thomson v. Dean, 7 Wall. 342, 19 L. Ed. 94, was a similar case. There also the decree on review finally adjudged title and right of possession, and reserved the matter of accounting for a future decree.

While Forgay v. Conrad and Thomson v. Dean are exceptional cases in the application of the Federal appeals statute then in force, they are not exceptional when substantive law is the test. Indeed, throughout the world of English-derived jurisprudence, there is unanimity that a decree which, on issues joined, and on submission by the parties and consideration by the court of all the evidence the parties can or choose to adduce and all the law the parties and the court deem applicable, adjudges that the complainant is the owner and entitled to the exclusive possession of property and that the defendant has unlawfully invaded the complainant's rights, and orders the defendant to surrender or keep away from the property forever, is a final decree on those issues, even though the issue concerning profits or damages from the defendant's trespasses has been reserved for future judicial action.

Decrees of this character have been held to be final in essence, regardless of time relation, in cases of partition, partnership, foreclosure, redemption, cancellation, rescission, injunction, condemnation, and many others.[1] English courts have never been tied by a statute limiting appeals to those that write "finis" to the litigation. In an English chancery cause there may be successive appeals. Consequently the essential nature of the decree or order has furnished the test.[2] And in its simplest form the test is whether the parties have intended to submit and have submitted an issue of title or right upon all their admissible contentions of fact and law and the court has intended to decide and has decided that issue and has put its decision into an immediately executable decree which in terms puts an end to that controversy, with no reservation of right to the parties or to the court for further or renewed

[1] Partition cases: Allison v. Drake, 145 Ill. 500, 32 N. E. 537; Ames v. Ames, 148 Ill. 321, 36 N. E. 110; Williams v. Wells, 62 Iowa, 740, 16 N. W. 513; Damouth v. Klock, 28 Mich. 163; McRoberts v. Lockwood, 49 Ohio St. 374, 34 N. E. 734; Lochrane v. Loan & Security Co., 122 Ga. 433, 50 S. E. 372; Cedar Co. v. Peoples Bank, 111 Fed. 446, 49 C. C. A. 422 (4th C. C. A.); Richmond v. Richmond, 62 W. Va. 206, 57 S. E. 736.

Partnership Cases: Decatur Land Co. v. Cook (Ala.) 27 South. 559; Sammis v. Poole, 89 Ill. App. 118, affirmed in 188 Ill. 396, 58 N. E. 934; Hastie v. Aiken, 67 Ala. 313; Hake v. Coach, 105 Mich. 425, 63 N. W. 306.

Foreclosure and redemption cases: Myers v. Manny, 63 Ill. 211; Gentry v. Lawley, 142 Ala. 333, 37 South. 829; Marquam v. Ross, 47 Or. 374, 78 Pac. 698, 83 Pac. 852, 86 Pac. 1; Mills v. Hoag, 7 Paige (N. Y.) 18, 31 Am. Dec. 271; Zimmerman v. Pugh (Ala.) 39 South. 989.

Cancellation or reformation of deed cases: McMurray v. Day, 70 Iowa, 671, 28 N. W. 476; Lohman v. Cox, 9 N. M. 503, 56 Pac. 286; Stahl v. Stahl, 220 Ill. 188, 77 N. E. 67; Jones v. Wilson, 54 Ala. 50; Johnson v. Northern Trust Co., 265 Ill. 263, 106 N. E. 814.

Perpetual injunction cases: Merch & Manuf'rs National Bank v. Kent, 43 Mich. 292, 5 N. W. 627; Sacramento Irr. Co. v. Lee, 15 N. M. 567, 113 Pac. 834; Improvement Co. v. Lund, 15 N. M. 696, 113 Pac. 840; Chicago Life Ins. Co. v. Auditor, 100 Ill. 478; Earl v. Jacobs, 177 Mich. 163, 142 N. W. 1079.

Condemnation cases: Petition of Philadelphia, M. & S. St. Ry. Co., 203 Pa. 354, 53 Atl. 191; Tennessee Cent. Ry. Co. v. Campbell, 109 Tenn. 640, 75 S. W. 1012.

Miscellaneous cases: Walker v. Crawford, 70 Ala. 567; People v. Bank, 133 Cal. 107, 65 Pac. 124; Wynn v. Bank, 168 Ala. 469, 53 South. 228; Robert v. Rousseau, 28 R. I. 335, 67 Atl. 330; Klein v. Independent Brewing Ass'n, 231 Ill. 594, 83 N. E. 434; Townsend v. Petersen, 12 Colo. 491, 21 Pac. 619; Fry v. Rush, 63 Kan. 429, 65 Pac. 701; Perrin v. Leper, 72 Mich. 454, 40 N. W. 859; Ayer v. Termatt, 8 Minn. 96 (Gil. 71); De Grasse v. Gossard Co., 236 Ill. 73, 86 N. E. 176; Arnold v. Sinclair, 11 Mont. 556, 29 Pac. 340, 28 Am. St. Rep. 489; Rawley v. Burris (Tenn. Ch.) 47 S. W. 176; France v. Bell, 52 Neb. 57, 71 N. W. 984; Marean v. Stanley, 34 Colo. 91, 81 Pac. 759; Neher v. Crawford, 10 N. M. 725, 65 Pac. 156; Canal Co. v. State of Louisiana, 233 U. S. 362, 34 Sup. Ct. 627, 58 L. Ed. 1001.

[2] British and colonial cases: In re Stockton Iron Furnace Co., 10 L. R. Ch. D. 335; Vidi v. Smith, 3 El. & Bl. 968; Fenner v. Wilson, 62 L. J. Ch. 984; North British Bank v. Collins, 1 MacQueen (Scotch Appeal Cases) 369; Shaw v. St. Louis, 8 Supreme Court of Canada, 385; Baptist v. Baptist, 21 Supreme Court of Canada, 425; Ahmed Musaji Saleji v. Hashim Ebrahim Saleji, Indian Law Reports, 29 Calcutta, 758; Bhup Indur Bahadur Singh v. Bajai Bahadur Singh, Indian Law Reports, 23 Allahabad, 156; Boloram Dey v. Ram Chundra Dey, Indian Law Reports, 23 Calcutta, 279; Carles v. Hertz' Trustee, 1904 Transvaal Supreme Court, 584.

presentation and consideration. Such a decree, after the term, can be opened only on petition for rehearing, bill of review, or appeal.

From the point of view of time any order is interlocutory that "speaks between" the beginning and the end of the litigation. But from the point of view of essence only those orders are interlocutory which abstain from determining the merits of any foundational issue of title or right and do no more than control temporarily the possession or use of property or the actions of the parties in order that the decree or decrees on the merits when rendered may be effectively executed.

Injunction cases (and there can be in reason no difference between the equitable protection of patent rights and other rights) furnish a particularly clear example of the essential distinction. An owner of property is harassed by repeated and continuing trespasses. He may bring a common-law action for damages on account of the trespasses. But that is not an adequate remedy against a persistent trespasser. So the owner invokes the equitable remedy of injunction devised by the old-time chancellors. In his bill he sets forth his title and right to exclusive possession and the defendant's repeated and continuing trespasses as indicative of the defendant's intent to trespass in the future, and thereupon prays, always for a permanent injunction, and sometimes for a temporary. If on affidavits and other informal and inconclusive evidence the chancellor orders the defendant to refrain until he can determine the equities on a full and formal submission and deliberate consideration of all the evidence and law, the order is not only interlocutory in time but also in essence. But when the parties have submitted everything they have respecting title and right to exclusive possession and the defendant's minatory attitude, and thereupon the chancellor enters a permanent injunction, immediately executable, the order is final in essence on the issues submitted and determined, but may be either final or interlocutory in time relation. It is final in time, if the owner asks no damages for past trespasses, or, having asked waives them. In McGourkey v. Toledo & Ohio Ry. Co., 146 U. S. 536, 546, 13 Sup. Ct. 170, 172 (36 L. Ed. 1079), it was said that a decree fixing the rights and liabilities of the parties and ordering an accounting before a master is final in time relation, that is, for the purposes of appeal, "if such accounting be not asked for in the bill." It is interlocutory in time if the owner sets up and demands his damages for past trespasses and the chancellor reserves that matter for future judicial action. But how comes the chancellor to act at all upon the matter of damages? Injunction, which is the sole basis of the equitable jurisdiction over the bill, is prospective—it regulates the conduct of the defendant for the future. Damages concern only the past. For them a common-law action was proper and adequate. But the chancellor, having rightly taken cognizance of an equitable subject-matter, rightly concludes, in order that there may be a speedy determination of both the equitable and the legal causes of action concerning the same property, not to remit the parties to the common law court, but to entertain the common-law cause of action as an appendage of the equitable cause. When the chancellor has found the complainant's title and right to ex-

clusive possession and from evidence of the defendant's repeated and. continuing trespasses has found the defendant's threat as to the future,. his entry of a permanent injunction exhausts every equitable issue in the bill. But the same evidence that discloses the defendant's threat as to the future usually proves the existence of damages for past trespasses. All that remains in such a case is to ascertain one element, the amount, in order to make the common-law cause of action complete. And it is more convenient that this should be done in the court that. already has jurisdiction of the parties and has established from the evidence the foundation of the common-law cause of action. So the decree of a permanent injunction, determining as it does all the equities of the bill, is final as to the equities, irrespective of whether an accounting. of damages for past trespasses is or is not reserved for future action.

With respect to time relation the distinction between a temporary and a perpetual injunction may be ignored without injury to the parties. If a decree that holds or creates a status until a full hearing can be had is challenged, the appeal must be taken within thirty days. Such a decree is interlocutory both in time and in essence. If a decree dismisses an injunctional bill for want of equity, a period of six months is allowed for appeal. Such a decree is final both in time and in essence. If a decree establishes a perpetual injunction and orders an accounting, no injury is done if, as a matter of procedural law, it be held that an appeal must be taken within thirty. days. Such a decree, though final in essence, is interlocutory in time, and stressing time in procedure, it may be better that the decree be classified as interlocutory for the purposes of appeal. But although appeals from decrees of temporary injunction and from decrees of perpetual injunction with accounting reserved are thus brought within the same section of the appellate. practice statute, no bar to recognizing the difference in essence between temporary and perpetual injunctions is thereby formed. On appeal from a decree of temporary injunction, the only question is whether the. trial court abused its discretion in holding or creating a status. If a decree of perpetual injunction with accounting reserved must be held to be interlocutory in essence because it is held to be interlocutory in time, then the only question on appeal would be the chancellor's abuse of discretion. This very contention was presented in Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810, and was rejected.

If a decree of perpetual injunction with accounting reserved is merely interlocutory in essence, then the defendant as a matter of right can insist that the chancellor hear again the same evidence and newly discovered evidence and decide anew the equities of the bill. If such a decree is affirmed on appeal, its character, if interlocutory in essence, is. not thereby changed, and the defendant could still insist on having his day in the trial court on the merits. In reply to such an insistence in. In re Potts, 166 U. S. 263, 17 Sup. Ct. 520, 41 L. Ed. 994, the court said:

"The decision and decree of this court did not amount, indeed, technically speaking, to a final judgment, because the matter of accounting remained to be disposed of. * * * But they constituted an adjudication by this court of

all questions, whether of law or of fact, involved in the conclusion that the letters patent of the plaintiff were valid and had been infringed. * * * The questions of novelty and infringement were before this court, and disposed of by its decree, and must therefore be deemed to have been finally settled, and could not afterwards be reconsidered by the circuit court."

And the defendant, of course, could not have the Supreme Court reconsider its final decree on validity and infringement except by petition for rehearing. Inasmuch as the act creating the Circuit Courts of Appeals (Act March 3, 1891, c. 517, 26 Stat. 826) requires those courts to hear and determine patent cases in the way theretofore done by the Supreme Court, we had assumed that our books were closed on the questions of the validity and infringement of the Christensen patent ever since 1915.

Lovell-McConnell Co. v. Auto Supply Co., 235 U. S. 383, 35 Sup. Ct. 132, 59 L. Ed. 282, involved a matter of taxable costs in a Circuit Court of Appeals. The fees in question were not taxable if the decree appealed from was a "final decree." It was held that a decree finding a patent valid and infringed, awarding a permanent injunction, and directing an accounting of damages and profits was a final decree for the purpose of determining the rights of the parties concerning costs. If a decree that is held to be interlocutory for the purpose of appeal is held to be final respecting a right to costs, how much more important it is that such a decree be held to be final respecting the right to hold a permanent injunction based on findings of validity and infringement after a full submission and consideration of all the evidence and the law bearing on those issues.

In Hamilton Shoe Co. v. Wolf Brothers, 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629, the statute governing the issuance of writs of certiorari by the Supreme Court to Circuit Courts of Appeals was interpreted and applied. It was held that a refusal to grant the writ on application to review a decree of perpetual injunction with accounting reserved was not equivalent to an affirmance of that decree by the Supreme Court; and that, a writ of certiorari having been granted after the Circuit Court of Appeals had passed on the accounting, the whole case was before the Supreme Court for review. This procedural decision is not deemed by us to oppose a holding that a decree of perpetual injunction with accounting reserved is a final decree on the equities unless vacated on appeal or writ of certiorari.

Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 37 Sup. Ct. 506, 61 L. Ed. 1148, is relied on by petitioner as demonstrating that the decree here in question is merely interlocutory in essence. In that case a bill for infringement was dismissed for want of equity by a District Court in Ohio, and that decree had been affirmed by the Circuit Court of Appeals for the Sixth Circuit (213 Fed. 789, 130 C. C. A. 447) Contemporaneously a bill by the same complainant against different defendants was pending in a District Court in Illinois, and that bill was dismissed for want of equity (193 Fed. 418). When the appeal from that decree came before this court, the defendants-appellees moved that the decree of the District Court be affirmed on the ground that they were in privity with the defendant in the Ohio

case (222 Fed. 261, 138 C. C. A. 23). The Supreme Court held that the issue of the defendants-appellees' having been privies to the decree of the District Court in Ohio was pleadable and the question of fact triable in this appellate court. The decrees of the two District Courts and the decree of the Circuit Court of Appeals for the Sixth Circuit were all final decrees both in time and in essence. No question arose or could arise whether a decree of perpetual injunction, immediately executable, though interlocutory in time by reason of a reserved accounting, is or is not final in essence on the issues of title and right of exclusive use. Our understanding of the Hart case is that the first adjudication on the equities of a bill is binding on the parties and their privies. In what ways that first adjudication may be availed of are matters of procedure. We do not understand that the intention of the parties in submitting their full proofs and the character of such submission, and the intention of the court in giving deliberate consideration to all the evidence and law the parties can present and the character of the result of such consideration, are dependent upon the subsequent condition that the court shall always deny and never grant the equitable relief prayed for in the bill.

We are unable to find, as a matter of substantive law, that a perpetual injunction has only a temporary purpose and force.

The petition is denied.