## NATIONAL BRAKE & ELECTRIC CO. v. CHRISTENSEN et al.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915. Rehearing Denied January 3, 1916.)

No. 2163.

1. PATENTS ⊚⟝139—SURRENDER FOR CANCELLATION—REISSUE—INFORMALITY OF PROCEDURE.

The surrender of a patent for cancellation because of an error therein is conditioned on the grant of a valid legal substitute, and if for any reason the commissioner was without authority to issue the second the cancellation of the first is ineffective. In such case, although not so applied for, the second patent might properly have been designated as a reissue, and the fact that it was not, but was granted for the full term from date of issue, does not render it invalid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 204; Dec. Dig. ⊚⟝139.]

2. PATENTS ⊚⟝328—VALIDITY AND INFRINGEMENT—COMBINED AIR PUMP AND ELECTRIC MOTOR.

The Christensen patent, No. 635,280, for a combined air pump and electric motor specially designed for use in connection with air brakes for railway and electric cars, claims 1, 3, and 4 being for the complete structure, and claim 2 for the pump alone, *held* not anticipated, valid, and infringed as to each claim.

3. PATENTS ⊚⟝157—CONSTRUCTION OF CLAIMS—"ATTACHED."

While the word "attached," used in a patent, conveys primarily the conception of a union of one piece to another, but detachable therefrom, it is also properly used to describe the relation between two parts of a single structure, each having its own function, whether integral or originally separate and then joined together, and in the latter case irrespective of whether or not the parts are detachable without injury.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. ⊚⟝157.

For other definitions, see Words and Phrases, First and Second Series, Attach.]

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Suit in equity by Niels A. Christensen and the Allis-Chalmers Company against the National Brake & Electric Company. Decree for complainants, and defendant appeals. Affirmed.

Charles A. Brown, of Chicago, Ill., and Thomas B. Kerr and J. Snowden Bell, both of New York City, for appellant.

Joseph B. Cotton, of Duluth, Minn., William R. Rummler, of Chicago, Ill., Willet M. Spooner, of Milwaukee, Wis., and James T. Watson, of Duluth, Minn., for appellees.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge. Letters patent No. 621,324 were issued March 21, 1899. Included therein was a sheet of drawings which had

formed part of the original application, but had been eliminated therefrom and made part of a separate application after a division. The patentee at once rejected the letters patent, returned them for cancellation, and because of the error there was issued to him letters patent No. 635,280 on October 17, 1899. The latter patent in terms ran for 17 years from its date.

Suit was begun on both patents, alleging an infringement of the invention, and asking that, if the latter should be deemed invalid because not issued in conformity with the reissue statute (R. S. § 4916 [Comp. St. 1913, § 9461]), the attempted cancellation of the former should be deemed a nullity.

The four claims of the patent, all of which are here involved, read as follows:

"1. In a combined air pump and electric motor the combination of the frame having a chamber adapted to contain oil, a shaft provided with a crank or eccentric inclosed in said chamber, a cylinder formed with or attached to said frame and opening at one end into said chamber, a piston fitted to work in said cylinder and connected with said crank or eccentric, a motor base attached to said frame and forming a cover for said oil chamber, an armature supported upon said base and connected by gears with said crank shaft, and a gear case attached to said frame and motor base and forming therewith an inclosure for said gears and a receptacle for holding oil, said frame, gear case and motor base completely inclosing and protecting the driving connection of the pump and the crank shaft terminating within said gear case, whereby a stuffing box therefor is dispensed with, substantially as and for the purposes set forth.

"2. In a pump the combination with a frame or case formed or provided with a closed chamber adapted to exclude dirt and to contain oil, a shaft having bearings in said frame or case and provided with a crank or eccentric within said chamber, a cylinder formed with or attached to said frame or case, a piston fitted to work in said cylinder and connected with said crank or eccentric, a shaft mounted on said frame or case and connected by gearing with said crank shaft, and a gear case forming an oil-tight closure over said gearing and the end of the crank shaft with which the driving connection of the pump is made, whereby a stuffing box for said crank shaft is dispensed with, substantially as and for the purposes set forth.

"3. The combination of a frame provided with boxes and formed with an oil chamber or well between said boxes, a shaft supported in said boxes and provided between them with a crank or eccentric, a cylinder attached to said frame and opening at one end into the oil chamber or well therein, a piston fitted in said cylinder and connected with said crank or eccentric, a motor base mounted upon said frame and forming a closure for said chamber, an armature shaft supported in bearings upon said base parallel with said crank shaft, and provided at one end with a pinion which meshes with a gear on the crank shaft, and a case inclosing said pinion and gear forming a receptacle for holding oil, a part of said case over said pinion being detachable, substantially as and for the purposes set forth.

"4. The combination of a frame formed with an oil well or chamber and provided with boxes in communication with said chamber, a shaft supported in said boxes and provided with a crank or eccentric, a cylinder attached to said frame and opening at one end into said oil chamber, a piston fitted in said cylinder and connected with said crank or eccentric, an electric motor mounted upon said frame and comprising a base which covers said oil chamber and is provided on the upper side with oil wells and box housings having detachable caps and with an armature housing and yoke having also a detachable cap, an armature and its shaft supported in said housings parallel with the crank shaft and provided at one end with a pinion which meshes with a gear on said crank shaft, and a gear case forming an oil receptacle and

composed of two parts, one attached to the frame and motor base, and the other to and removable with the cap of the adjacent box housing, substantially as and for the purposes set forth."

As stated in the specifications, the main object of the invention was:

"To provide within small compass or in compact form a combined pump and motor of simple and durable construction that will not be affected by dust, mud, ice, or snow, that will be efficient and economical in operation, and that will require little attention."

The particular use of the combined pump and motor was, as further stated therein:

"In connection with air brakes for railway cars on which the pump and motor are usually exposed to dust, mud, and snow, and the working parts if unprotected soon become worn and inoperative, besides requiring constant or frequent attention."

Complainants' and defendant's devices are shown in the following drawings:

COMPLAINANTS'.

The modern electric trolley car requires for efficient operation a brake operated by compressed air. The air pump or compressor maintains a supply of air under heavy pressure, available when the brake is to be applied. An electric motor is advisable, inasmuch as the same electric current that supplies the car can give the motive power to operate the pump. Combining motor and pump is essential for compactness; thoroughly inclosing the parts enables the device to be placed in what is economically the best place, underneath the car, without endangering the construction and operation from the dirt, snow, and ice that gather about it. The problem presented to Christensen was to secure this compactness, efficiency of operation, durability of the parts, and, despite its location, accessibility for repairs. No device then on the market operated satisfactorily. Christensen's structure solved the problem. The evidence clearly establishes that it met an immediate need, and was extensively adopted both in the United States and in other countries; that appellant; having become the purchaser of the works of a corporation, organized by the inventor for the manufacture of the device, through a bankruptcy sale, continued the manufacture under a

license from 1905 until December, 1906; that it then canceled the license and began to manufacture the alleged infringing equipment. The case is before us on appeal from a decree of the District Court, holding the patent valid and infringed as to all of the claims.

DEFENDANT'S.

[1] 1. It is of no moment which of the two patents be held to be in force. The surrender for cancellation of the one was conditioned upon the grant of a valid legal substitute. If the Commissioner of Patents was without authority to issue the second, then, in our judgment, his action in canceling the first must be deemed legally ineffective. We agree, however, with the learned trial judge that, while Christensen's procedure did not aim at a reissue, the situation is identical with that presented on an application for reissue, and that, without formal application, the later patent might have been designated as a reissue. This is a case of a pure clerical error, not of double patenting. While two documents have been issued, there is but a single grant of one and the same right to the same person.

That the second patent was erroneously granted for a term of 17 years from its date does not nullify it. The law itself prescribes the term of a patent; 17 years is the maximum. It may for several reasons expire at an earlier date. The failure properly to limit the term no more affects the validity in this case than it does in a case where, because of a prior foreign patent having a shorter term, the United States patent by law expires before the end of the 17 years specified in the document.

[2] 2. Claims 1, 3, and 4 are for the complete structure; claim 2 is for the pump alone. The several defenses will be considered separately as to these two classes of claims.

(a) As to claims 1, 3, and 4: Concededly there is no direct anticipation. Novelty and invention in combining old elements is not controverted, if the claims be limited to the form indicated in the drawings and in the literal language of the claims; but, in that event, infringement is denied.

The conceded element of novelty is the creation of a unitary structure, instead of a mere aggregation of air pump and electric motor by the use of the motor base for a cover of the compressor; that is, by the use of a single piece of metal. This, defendant says, alone saves the structure from the charge of aggregation. It admits that thereby, in addition to slightly greater compactness and a readier accessibility to the compressor parts, valuable in cleaning and repairing, the cooling of the motor by the direct splashing of the oil in the compressor on this single metal sheet is obtained. It is important for the durability and efficiency of the motor that the heat therein be reduced as far as possible.

In defendant's structure, the metal sheets forming the motor base and compressor cover are bolted separately to their respective compartments. The air space between them is, in actual practice, only $1/16$ to $3/16$ of an inch, and is not uniform in any one machine. Defendant claims that its motor is cooled by means of this air space, and that thus it secures an identical result without infringement, through the use both of a different construction and a different method. This is based on the theory that the space is a medium through which cooling air circulates and an insulator by which the heat of the compressor compartment is prevented from passing to the motor parts.

The thinness and lack of uniformity of the air space, and particularly its tendency to fill with dirt and mud, however, practically nullify its usefulness as an air circulating medium; the tests, moreover, demonstrate the falsity of the insulation theory, upheld by one of defendant's experts. They prove conclusively that more heat is generated in the motor than in the compressor compartment, and that, therefore, in so far as the air space could fulfill its alleged function of insulation, it would check the desirable conduction of heat from the motor parts; it would act detrimentally, not beneficially.

The union of the motor and compressor boxes by a single sheet of metal serves, however, another function than that of enabling the splashed oil to act as a motor cooling medium. The metal sheet connection is a heat conductor; through it some of the greater heat of the motor compartment is conducted to the compressor chamber and dissipated. And this same function is attained in the same way in defendant's structure, for while it purports to separate the two sheets by a worse than useless air space, it actually joins them together by the bolts and bosses, and also, when in operation, by the dirt and mud that gathers in the space. These form a heat conductor less efficient, but substantially equivalent, to complainant's single metal sheet.

We can see in defendant's structure merely an attempt to evade complainant's patent by first dividing the one sheet of metal into two parts without any reason therefor, and at the sacrifice of the desirable results of greater compactness and accessibility to the parts, and by then separating these two parts for an alleged purpose which, far from being attained, is reduced or lost in the measure that the intervening space actually remains an air chamber. If one plate were cast, and a center space cored out, this piece of metal would be literally both motor base and compressor cover. Infringement is not avoided by completing the separation and then partially reuniting the parts.

Christensen himself made 120 devices, having the base cover in two parts with a space between; but, as he says, he "abandoned" it because of its inferiority. This, however, was after his application had been filed; the so-called "abandonment" involved merely the practical substitution of the preferable for the less desirable form; it was not a legal abandonment to the public of any rights covered by his application and secured to him by the patent issued thereon.

Even if complainants are to be restricted to a very narrow range of equivalents, defendant's two plates joined by bolts and bosses, though separated in part, must be deemed substantially equivalent to complainants' single plate. The gear case is variously described. Claim 1 reads:

"A gear case attached to said frame and motor base and forming therewith an inclosure for said gear and a receptacle for holding oil, said frame, gear case and motor base completely inclosing and protecting the driving connection of the pump and the crank shaft terminating within said gear case, whereby a stuffing box therefor is dispensed with."

Claim 3:

"A case inclosing said pinion and gear forming a receptacle for holding oil, a part of said case over said pinion being detachable."

Claim 4:

"A gear case forming an oil receptacle and composed of two parts, one attached to the frame and motor base, and the other to and removable with the cap of the adjacent box housing, substantially as and for the purposes set forth."

Defendant's gear case is cast in part at least integrally with the pump box, and is thus not a completely detachable attachment. For the reasons which we shall state in considering claim 2, infringement is not thereby avoided. Claims 1, 3, and 4 were therefore properly held valid and infringed.

(b) As to claim 2: This claim is for the pump alone. Anticipation, lack of invention, and noninfringement are the defenses urged.

(aa) As to infringement: The two gear cases differ, in that complainants' is a separate casting, attached detachably to the frame $A$ by bolts, whereas defendant's is cast integrally as part of the crank case up to the cover with an opening through which the upper part of the spur gear passes, and above that, integrally as part of the motor case.

While defendant's compressor and gear chambers thus form one and not (like complainants') two compartments, they may be separated in defendant's device, so as to permit the use of different oils in the two chambers, and the two chambers in complainants' device are in fact so connected as to permit the use of the same oil in both chambers. Thus, whether so cast as to form one or two chambers, separation or connection is feasible in both; with their detached caps and covers they form in practically equal measure an oil-tight closure over the gearing and the end of the crank shaft, thus dispensing with the stuffing box for the crank shaft; irrespective of the number of separate pieces of metal of which they are composed or of the presence or absence of complete detachability from the rest of the structure, they have the same function of inclosing and protecting all the working parts of the transmission and of permitting the use of the same or different oils for the compressor parts and the gears. Defendant secures no new function by its construction; it loses some of complainants' advantages of easier access for alignment of the shafts and adjustment of gears. The two are substantially equivalent, unless complainants are to be limited to a detachably attached gear case.

[3] While the word "attached," which is used in claims 1, 3, and 4, conveys primarily the conception of a union of one piece to another, but detachable therefrom, it is also properly used to describe the relation between two parts of a single structure, each having its own function, whether cast integrally, or originally separate and then joined together, and, in the latter case, irrespective of whether or not the parts are detachable without injury to one or both. And a comparison of the several claims indicates that Christensen used the word in its broadest meaning, as including the relation to the rest of the structure of a case which was either separate and detachable from or a portion of which was cast integrally with the crank case. In claim 3, in which the gear case is not specifically stated to be attached to the frame, its cover is described as detachable; and in claim 4, while

one part of the case is described as attached to the frame and motor base, the other part is stated not only to be attached to but to be removable from the adjacent box housing.

So far, however, as claim 2 is concerned, the gear casing, while stated as an element, is not further described as to its attachment to or detachment from the other parts of the device. There is no limitation, other than that it forms part of a unitary structure. That the drawings and specifications show a detachably attached case indicates merely the preferred construction; it does not limit the claims to that form. In a somewhat analogous case the court said, in National Tube Co. v. Mark, 216 Fed. 507, 133 C. C. A. 13 (C. C. A. 6th Circuit):

"We find nothing upon the face of the patent requiring the claim to be limited to rolls which had these flanges attached to and integral with the rolls. It is true that neither by drawing nor specification does Fell suggest the performance of this function by stationary parts of the frame, but this is not necessary. In the absence of something clearly showing that the patentee did intend to have his grant confined to a specific form, a broad and generic claim may rightfully stand on a mere specific disclosure; and the invalidity of such a claim (if it is invalid) will result, not from the applicant's failure to use more sweeping language in his specification, but from the state of the art limiting the actual invention. The claims are part of the description required by statute, and in them, and not in that part of the description which is now commonly called 'specification,' is the proper place in which to define the breadth of the invention, as was most accurately apprehended by Fell's solicitor when he (though quite unnecessarily) said that various changes might be made 'without departing from my invention as defined by the appended claims.'"

The specifications, moreover, specifically state:

"It is obvious that various modifications in the details of construction and arrangement of parts may be made within the spirit and intended scope of my invention."

The concluding words of the claims, "substantially as and for the purposes set forth," are, if possible, even weaker than the phrase "substantially as described" (very fully considered in National Tube Co. v. Mark, supra) to indicate a limitation of the claim to the preferred form shown in the drawings and specifications. There is nothing in the history of this claim in the Patent Office which limits complainants to a detachably attached case.

(bb) As to anticipation: The nearest reference is claimed and conceded to be the Ward patent, No. 443,020, for refrigerating apparatus. The compact form of structure necessitated by the use for which the complainants' device is primarily designed makes the complainants' arrangement of the parts essential. Ward's machine, designed for a totally different purpose, enables him to locate the gearing, which connects the driving shaft and the crank shaft, between the bearings, at the middle instead of at the end of the shaft, and to place the cranks on the ends. The gearing is partitioned off; no splashing effect of the oil from the gears onto the crank or vice versa, is possible. Moreover, these partitions form an inclosing gear case separating the crank compartments into two separate chambers; neither end of the crank shaft terminates in and is inclosed by this gear casing; intermittent

lubrication is provided for these two crank chambers by openings in the top of the case. There could be no cooling effect of any oil on the working fluid or on the motor, as there is when, in accordance with the specifications and the other claims, the motor base covers the Christensen pump chamber.

In the next nearest reference, the General Electric Company's duplex electric sinking pump, described in 21 Electrical World, 380 (1893), there is no communication between the gear and the crank chambers, so that the oil in one cannot flow into the other.

While an inclosed gear chamber, obviating the need of a stuffing box for the crank shaft end, is shown by the Grillenberger patent, 209,673, and other references, to be old, its use in a pump like complainants', designed or adaptable for the purposes to which it is to be put, and separably united, as this is, with the compressor chamber, has not been anticipated.

(cc) As to invention: The line between mechanical and inventive genius is often difficult to draw. This structure met a great need; highly skilled engineers familiar with the old elements failed thus to utilize them; the bringing of them together in this compact, ingenious form concededly amounted to invention. True, this applies to the combination of motor and pump; claim 2 is limited to the pump alone. The pump, however, necessarily requires some motive power; for the purposes for which it was primarily designed, the electric motor obviously was the only one that would be selected. The combination of (a) An oil-holding, gear-inclosing case in which the one end of the crank shaft terminated and by which it was protected, dispensing with the undesirable stuffing box, and (b) The compressor case with its parts so arranged as to utilize the oil for both lubricating and cooling purposes, if the motor should be attached to the pumps as stated in the other claims, united in such a way as to secure the highly desirable compactness, ready accessibility to the parts, and adaptability, through their possible connection, to the flow of the same lubricant from one to the other, or by their possible separation, to the use of a different lubricant for each of them, required more than mere mechanical skill. No pump is shown to have anticipated Christensen's; none was adapted to this particular service, or had all of these functions; the utilization of old elements for this new form of construction to meet this specific need was, in our judgment, an exercise of inventive genius.

The decree of the District Court is affirmed.