## NATIONAL BRAKE & ELECTRIC CO. v. CHRISTENSEN et al.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1921. Rehearing Denied November 14, 1921.)

No. 2163.

1. Equity ⬅=443—Bill of review, or petition in nature thereof, lies only to final decree.

Neither a bill of review, nor a petition in the nature of a bill of review, is addressable to a decree that is not final in its essence.

2. Equity ⬅=445—Bills of review allowable for apparent errors or new matters.

Bills of review are allowed for the purpose either of correcting errors of law apparent on the face of the record, or of admitting new evidence which has come into being since the decree, or was not known or knowable at the time of the trial.

3. Equity ⬅=447(2), 452—Bill of review not allowed, if there is delay in presenting matters, or if equities would not be changed.

A bill of review will not be allowed, if the new evidence or the errors of law are not presented at the earliest practicable moment, or if they would not change the substantial equities between the parties.

**4. Equity 446—Decree not opened on bill of review, to let in technicalities.**

A decree establishing true justice between the parties should not be opened on bill of review, to let in mere legal technicalities, which on the opening up would be reformed to accord with the unimpeachable equities apparent in the record.

**5. Equity 446—Decree supported by findings held not subject to review for error of record.**

Where the court in a patent infringement suit found novelty, utility, the exercise of the inventive faculty, nonanticipation, absence of aggregation, presence of a true combination, the applicant's full compliance with all requirements, the issuance of the patent, of which the applicant continued to be the equitable and legal owner, and defendant's unlicensed use of the invention, the only equitable and legal conclusion was that an injunction should issue and an accounting follow, and there was no error of record authorizing a bill of review.

**6. Equity 447(1)—Identity of defendants in patent infringement suits held not newly discovered evidence, supporting bill of review.**

Where the substantial identity of the defendants in a patent infringement suit, in which a decree for plaintiffs was rendered in 1914, and a similar suit, in which a claimed repugnant decree was entered in 1917, was known to defendant, but unknown to plaintiffs at all times, it did not constitute newly discovered evidence, which would support a bill of review by defendant.

**7. Equity 446—Decree in patent infringement suits held not to be opened on bill of review, for purpose of writing a more explicit decree.**

In a patent infringement suit, in which plaintiffs pleaded a corrected patent, but by amendment set up the original patent and disclaimed a monopoly, except for 17 years from the date of the original patent, and the court found that there was but a single grant, and not a case of double patenting, but the decree inadvertently was based on the corrected patent, limiting the monopoly, however, to 17 years from the date of the original patent, no opening of the decree *held* necessary on bill of review, even for the purpose of writing a more explicit decree.

**8. Equity 431—Decrees read in light of pleadings, evidence, findings, and conclusions.**

A decree must be read in view of the bill, answer, evidence, findings of fact, conclusions of law, and the whole record, of which it is the consummation.

**9. Equity 445—Decrees in patent infringement suits held not in conflict, so as to support bill of review.**

A patent, through error, contained a sheet of drawings having nothing to do with the invention, and the Patent Office, instead of canceling or removing it, issued a new patent. The patentee sued for infringement, setting up the second patent, but in response to the defense of double patenting pleaded the first patent by amendment, and disclaimed any monopoly, except for 17 years from the date of the first patent. The answer, as permitted to stand, made no issue respecting notice or prolongation of the franchise. The court found that there was but a single grant, and not a double patenting, and rendered a decree which limited the franchise to 17 years from the date of the first patent, and, by inadvertence, adjudged the second patent valid. In another suit, the first patent was adjudged valid, and the second invalid. *Held*, that there is no conflict in the two judgments, so as to require the opening of the judgment in the first suit on bill of review.

**10. Equity 445—Supposed repugnant judgments not between same parties, so as to authorize opening on bill of review.**

Where, in a suit for infringement of a patent, brought in Pennsylvania, plaintiffs, who had obtained a decree for infringement in Wisconsin

against a company which was in fact a subsidiary of the same parent company as the Pennsylvania company, sought to prove the relationship, but it was obstructed by defendants' counsel, and defendants never admitted or asserted the privity of the defendants until after the decree in the Pennsylvania suit, and until an accounting in the Wisconsin suit, the Wisconsin decree will not be opened on bill of review, to permit the Pennsylvania decree to be pleaded as res judicata.

**11. Judgment ⬤⇒887—Plaintiffs held not to waive decree by failing to bring it into the record of another suit.**

Where plaintiffs, suing for infringement of a patent in Pennsylvania, had no knowledge or notice of the privity between the defendant and a defendant against whom they had already obtained a decree for infringement in Wisconsin, they did not release the Wisconsin decree, or estop themselves from claiming the benefit thereof, by failing to bring it into the record in the Pennsylvania suit.

**12. Judgment ⬤⇒633—Defendant held estopped to claim estoppel against plaintiffs with respect to failure to set up decree in another suit.**

Where plaintiffs, after obtaining a decree for infringement of a patent in Wisconsin, conducted a suit in Pennsylvania against another defendant, without setting up the Wisconsin decree, and after a decree in the Pennsylvania suit defendant, with full knowledge of plaintiffs' ignorance of the concealed relationship between the two defendants, failed to claim an estoppel for three months, during which time plaintiffs with great difficulty and expense were endeavoring to procure an accounting in the Wisconsin suit, defendant was estopped to base a claim of estoppel on plaintiffs' failure to set up the decree in the Pennsylvania suit.

**13. Judgment ⬤⇒633—Defendant held barred by laches from setting up judgment in favor of one in privity with it.**

The defendant in a patent infringement suit brought in Wisconsin *held* barred by laches from pleading a supposed repugnant decree rendered in Pennsylvania in favor of a company with which it claimed to be in privity, by reason of its delay in avowing such relationship and presenting its petition for leave to file a bill of review.

Petition for Leave to File Petition in Nature of Bill of Review in the District Court of the United States for the Eastern District of Wisconsin.

Suit by Niels A. Christensen and another against the National Brake & Electric Company. On petition by the defendant to the Circuit Court of Appeals for leave to file in the District Court a petition in the nature of a bill of review. The petition was denied (258 Fed. 880), but the order was reversed by the Supreme Court (254 U. S. 425, 41 Sup. Ct. 154, 65 L. Ed. 341). Petition denied.

John S. Miller, of Chicago, Ill., for petitioner.

William R. Rummler, of Chicago, Ill., and Louis Quarles, of Milwaukee, Wis., for respondents.

Before BAKER, EVANS, and PAGE, Circuit Judges.

BAKER, Circuit Judge. A preliminary view of the instant controversy may be had by referring to the opinion of Judge Geiger, August, 1914, in which he directed the entry of (1) an injunctional decree on the merits of Christensen's patent monopoly of a combined pump and motor, and (2) an order for an accounting; the opinion of this court, October, 1915 (229 Fed. 564, 144 C. C. A. 24), affirming the

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

rulings of Judge Geiger; the order of the Supreme Court, February, 1916 (241 U. S. 659, 36 Sup. Ct. 447, 60 L. Ed. 1225), denying petitioner's application for a writ of certiorari; the opinion of the Court of Appeals for the Third Circuit, July, 1917 (243 Fed. 901, 156 C. C. A. 413), holding that Christensen's patent 635,280 was a nullity, in obedience to which the District Court for the Western District of Pennsylvania, on October 1, 1917, dismissed respondents' bill against the Westinghouse Traction Brake Company as to patent 635,280; the opinion of the Court of Appeals for the Third Circuit, June, 1918 (252 Fed. 392, 164 C. C. A. 316), refusing to hold that the merits of respondents' bill as to patent 621,324 had ever been adjudicated in that circuit; the opinion of Judge Geiger, July, 1918, unreported, denying petitioner's motion to interpose as a defense to the entire bill, which was founded on patents 621,324 and 635,280, the decree in the Third Circuit holding that patent 635,280 was a nullity; the opinion of this court, April, 1919 (258 Fed. 880, 169 C. C. A. 600), denying petitioner's application for an order to direct the District Court to receive petitioner's proposed answer of res adjudicata and thereupon to dismiss respondents' bill; and the opinion of the Supreme Court, December, 1920 (254 U. S. 425, 41 Sup. Ct. 154, 65 L. Ed. 341), reversing this court's order of general dismissal of the petition and directing a determination of the merits of the petition "as an application for leave to file in the District Court a petition in the nature of a bill of review."

Since the remand the petitioner has brought no additional facts into the record, and in its additional brief it has advanced but two new contentions: (1) That the Supreme Court has decided that the Wisconsin District Court's decree is only interlocutory in its essence, and that petitioner is therefore entitled as a matter of right to interpose its answer of res adjudicata; and (2) that respondents, by conducting the Pennsylvania litigation against the Westinghouse Traction Brake Company, without bringing into that record their Wisconsin decree against petitioner as an adjudication against the Westinghouse Traction Brake Company, have released and canceled their Wisconsin decree against petitioner, even assuming that it was final in its essence.

[1] As to the first of the new contentions we are of the opinion that, if the Supreme Court had intended to sustain petitioner's demand to file an answer of res adjudicata as a matter of right because nothing had yet been adjudicated in this circuit, language would have been used which would express that intent. Our view is based, not merely on the silence of the Supreme Court in that respect, but as well on attributing the usual legal meaning to the words actually employed. Without going into the history of reviews, or the distinction between filing a bill of review to open a decree which has been "signed and enrolled," and filing a bill or petition in the nature of a bill of review to open a decree which has not been signed and enrolled, but which at the direction of the court has been recorded by the clerk in the order book, it is enough to say that a bill of review and a petition in the nature of a bill of review are alike in this: That neither is addressable to a decree that is not final in its essence. At the former hearing of

this petition our mistake consisted, not in denying petitioner's prayer for the specific relief based on the contention that nothing had been adjudicated in this circuit, but in our failure to give proper significance to the added prayer "for general relief," and therefrom to perceive an invocation to examine the record to determine whether facts exist which would appeal to the equitable discretion of a chancellor and afford a proper basis for opening in the interests of justice and equity a decree which otherwise would remain final.

Our answer to the second of the new contentions will appear in the course of our disposition of the case on the entire record.

[2-4] I. Bills of review are allowed for the purpose either of correcting errors of law apparent on the face of the record or of admitting new evidence which has come into being since the decree or was not known or knowable at the time of the trial. Not only will the appeal to equitable discretion fail if the new evidence or the errors of law are not presented at the earliest practicable moment, but also if the errors of law or the new evidence would not change the substantial equities between the parties. In this entire record from beginning to end we find nothing to change the substantial justice based on the following established facts: Christensen made a valuable invention. He fully and accurately complied with all the conditions necessary to obtain from the government a franchise to exclude others from practicing his invention. In consideration of his disclosure the government executed and delivered to him its franchise-contract. Petitioner's predecessor, the general manager in charge of operations being continuously the same, used Christensen's invention under license. After that license was abrogated and a new license was given to respondent Allis-Chalmers Company, petitioner continued to use the invention. Neither notice nor bill for injunction sufficed to stop infringement, which began before the filing of the original bill in 1906 and continued until the expiration of the patent in March, 1916, with the litigation still unended. In stating the facts controlling the merits we have omitted a clerical mistake of the Patent Office and also an oversight on the part of respondents' counsel or the clerk of the District Court, which was not corrected by the judge of the District Court or the judges of this court, in failing to have the wording of the decree conform strictly to the facts as found by both courts respecting the merits. Both of these matters will be set forth fully hereinafter; but at this point we desire to emphasize that, even assuming for the moment that these technicalities are of legal soundness, the decree which establishes true justice between the parties should not be opened up to let in mere legal technicalities which, on the opening up, would be reformed to accord with the unimpeachable equities apparent in the record.

[5] II. No error of law is apparent on the face of the Wisconsin record. On the finding of facts respecting novelty, utility, the exercise of the inventive faculty, nonanticipation, absence of aggregation, presence of a true combination, the applicant's full compliance with all requirements, the government's issuance to him of a franchise to exclude unlicensed persons, of which he continued to be the equitable

and legal owner, and defendant's unlicensed use of the invention, the only equitable and legal conclusion was that an injunction should issue and an accounting follow.

[6] III. Under the head of newly discovered evidence petitioner offers the 1917 Pennsylvania decree in the suit of respondents against the Westinghouse Traction Brake Company, holding that patent 635,-280 was a nullity. Between that decree and the 1914 Wisconsin decree in this suit of respondents against petitioner, in which the injunction was based in words upon patent 635,280, apparently there is opposition. In subsequent paragraphs of this opinion we will point out that, when these decrees are read in the light of the issues, the evidence, the findings of fact and the conclusions of law in the respective cases, the seeming repugnancy utterly disappears. But for the purpose of this paragraph we assume that there is an irreconcilable conflict. What pertinency to the 1914 Wisconsin decree has the fact that the Pennsylvania courts in 1917 entered a repugnant decree between different parties? None, of course, in and of itself. But petitioner seeks to make that otherwise irrelevant fact material by contending that the record shows that the Wisconsin defendant and the Pennsylvania defendant were Siamese twins, that one and the same stream of blood (capital and management) sustained both, that a blow upon one was ineluctably felt by the other, and that neither could defend itself without defending the twain. Was this, the only material new fact offered, one that came into being since the decree, or, if older, was unknown to petitioner prior to the decisions in this circuit? From the record the facts are that petitioner knew of the twinship ever since 1906 and that respondents fought the case through and obtained their decrees in this circuit in the belief that petitioner was a separate and independent infringer. If petitioner had desired in 1914, as it now desires, to have one decree be a bar for both infringers, it could then have brought the matter into this case.

IV. Inasmuch as there is neither newly discovered evidence nor error of law in the decision on the merits, and especially as this appeal to equitable discretion is antagonistic to any desire to see substantial justice done, it would seem that those three grounds would afford sufficient basis for dismissing the petition. But, on petitioner's hypothesis that the Supreme Court intended that this court should do more than determine whether the petition, viewed as an application in the nature of a bill of review, required the opening of the Wisconsin decree, we proceed, as if the decree were opened, to examine the sufficiency of the proposed answer of res adjudicata.

[7, 8] A. What was decided in this circuit? Respondents filed the usual bill on patent 635,280, dated October 17, 1899, averring marking and notice. Petitioner filed the usual answer as to the merits of the alleged invention and as to the fact of infringement, and additionally set up a defense of double patenting in this, that patent 621,-324 dated March 21, 1899, for the identical invention was issued in identical words to the same patentee, on account of which the later patent 635,280 was void. Thereupon respondents filed an amended bill, stating that after allowance of Christensen's application the Pat-

ent Office issued to him patent 621,324; that some clerk had inadvertently bound in with the sheets of drawings referred to in the specification a sheet of drawings that had nothing to do with the invention described in the specification and covered by the claims; that Christensen, noticing the errant sheet, returned said patent 621,324 "for the sole and only purpose of securing a correction therein by having said sheet 2 eliminated from the drawings attached thereto"; that the Patent Office, instead of cutting out the fugitive sheet or marking it canceled, issued to Christensen patent 635,280 which, excepting number and date, is patent 621,324 with sheet 2 eliminated; that there was but one application, one allowance, one order of grant; that Christensen disclaimed and now disclaims any monopoly after March 21, 1916; and praying that the court adjudge that patent 621,324 is valid evidence of the single grant, "unless the court shall find and adjudge that patent 635,280 is valid for a term ending March 21, 1916." Petitioner did not answer the amended bill, but procured an order of court allowing its answer to the original bill "to stand as an answer to the amended bill as to all defenses relating to the novelty, patentability, validity and infringement of patent 621,324." Therefore the issues joined on the amended bill were confined to the merits of the invention and the fact of infringement. There was no issue respecting marking or notice or prolongation of the franchise from March 21, 1916, to October 17, 1916. It was on this situation that Judge Geiger found:

"Whether the patent be evidenced by the one document, the other or both, is not, in view of the issues now here, material. Complainants' contention that, even though the second patent on its face extends the term of the monopoly beyond that permitted by statute, the court may, when necessary to protect the public or a party, give the instrument its actual limitation and effect, strikes me as fair and entirely consistent with the spirit of the patent laws. In other words, there is no reason why the irregularity of procedure should work a default or a total lapse in the patentee's right or title, especially as against one who has not been injured or misled, nor from whom relief is sought in reliance upon the irregularity. The question, upon the present state of the case, is therefore academic only."

And on the appeal this court held:

"It is of no moment which of the two patents be held to be in force. * * * This is a case of a pure clerical error, not of double patenting. While two documents have been issued, there is but a single grant of one and the same right to the same person."

Judge Geiger's written direction on finding the amended bill to be true was as follows:

"Complainants may take a decree sustaining the patent and adjudging infringement."

If complainants or the clerk or the judge of the District Court or the judges of this court had seen to it that the decree of injunction and order of accounting were in direct words based on the single grant, evidenced by patent 621,324, or evidenced by patent 635,280 reformed to stand only as a correction of patent 621,324 by the elimination of the improvidently inserted sheet of impertinent drawings, or evidenced by both the original document and the reformed copy of the original, petitioner's struggle to evade paying for its appropriation of

a meritorious invention would have been at an end. But the decree as actually entered declared:

"I. That the patent of Christensen 635,280, dated October 17, 1899, for combined pump and motor, is good and valid as to each and every of the claims thereof."

On this solitary hook petitioner hangs its robe of innocence. Let us examine the hook's strength as against paragraph IV of the decree:

"That the said defendant, its officers, agents * * * and each of them, for the remainder of the term of seventeen years from and after March 21, 1899, are hereby enjoined from making, selling or using any combined pump and motor embodying the improvements described in any of the claims of said letters patent 635,280."

Paragraph I of the decree shows that patent 635,280 was dated October 17, 1899, and paragraph IV limits the franchise to 17 years from March 21, 1899. What is the meaning of this limitation? A decree must, of course, be read in view of the bill, answer, evidence, findings of fact and conclusions of law, the whole record, of which the decree is the consummation. So read, the decree means that patent 635,280 has no standing in the case except as a corrected copy of patent 621,324, dated March 21, 1899, which lawfully granted the single franchise to exclude others for 17 years from that date. Consequently the case need not be opened even for the purpose of writing a more explicit decree.

[9] B. What was decided in the Third Circuit? On petitioner's motion for a decree of dismissal on bill and answer, respondents' bill counting, as here, upon patents 621,324 and 635,280, petitioner's answer, not as here, raising issues (1) as to marking, and (2) as to prolongation of the monopoly from March 21, 1916, to October 17, 1916, both patents having expired pendente lite, and nothing remaining but the question of accounting, the courts in the Third Circuit held patent 621,324 valid and patent 635,280 invalid. From the decision in 243 Fed. 901, 156 C. C. A. 413:

"We think it clear that the question now presented was not directly decided in the Seventh Circuit. As the suit there was begun in December, 1906, when both patents were only between 7 and 8 years old, the question which patent was in force was 'academic.' One or the other was valid, and as the invention was identical the infringer was not harmed by being enjoined under one rather than the other. In point of fact the injunction was under the second patent, and this is the decree that was affirmed, although the opinion of the Court of Appeals may be thought to lean toward the view that the first patent continued to be in force, and that the second patent had been erroneously granted. But, while it might be regarded as a matter of indifference under which patent an injunction should be granted, the situation is changed when the question of accounting is presented. The two patents have different dates of expiration, and the question of marking is also to be considered. We are therefore required now to decide between the two, for confessedly both cannot be valid, and in our opinion the decision should be in favor of the first patent. The mistake could have been corrected under rule 170 of the Patent Office."

On the question of marking, the courts in this circuit said nothing, because in closing the issues that question was eliminated. On the question of the prolongation of the monopoly beyond March 21, 1916, the courts in this circuit found in harmony with the finding in the

Third Circuit, and embodied that finding in paragraph IV of the decree, which passed unnoticed in the Third Circuit. We agreed that patent 635,280 was void as an independent grant. They agreed that patent 621,324 was valid. They did not disagree that patent 635,280 when limited to March 21, 1916, was merely a corrected copy of the original legal document.

[10] C. Who were the parties to the respective decrees? In the Wisconsin suit, petitioner, the National Brake & Electric Company, was the defendant; in the Pennsylvania suit, the Westinghouse Traction Brake Company. On the face of things the companies seemed to be strangers. As heretofore stated, respondents obtained their decrees here in the belief that they were prosecuting a separate and independent infringer. In taking depositions for the Pennsylvania suit, respondents, possibly for the purpose of pleading the Wisconsin decree as a bar, attempted to extract from witnesses connected with one or the other of the defendant companies a disclosure of the relationship. Taking, as we do, the two companies to be one in interest in these lawsuits, we find that their counsel obstructed respondents' attempt, frequently advising the witnesses not to answer. At no time during the Wisconsin litigation (except as hereinafter stated) or during the Pennsylvania litigation did either company admit or assert their privity. It was not until the president and vice president of the Westinghouse Air Brake Company were called in December, 1917, as witnesses for petitioner before the master in the Wisconsin accounting that anything definite appeared from which a finding could be made or which would charge respondents with notice. From their testimony it seems that the Westinghouse Air Brake Company, which was not a party to either suit, is a large "parent" corporation with many "subsidiary" corporations in its family, including the two infringing companies. On cross-examination they substantially admitted that, until after they thought they had secured some advantage by reason of the asserted conflict between the Pennsylvania decree and the Wisconsin decree, petitioner's relationship to the parent and the family was deliberately concealed. Distinctive machines were put forth by the infringing defendants, and the parent let the public believe that the two children were competitive sellers of competitive devices.

From the testimony of the president of the Air Brake Company:

"XQ. Did you consider the National Brake & Electric Company a competitor of either the Westinghouse Air Brake Company or Traction Brake Company on and after 1906?

"A. We considered the National Brake & Electric Company as supplying a type of machine, in which the apparatus furnished by the Traction Brake Company was not found as marketable as that of the National Company.

"XQ. And that relationship still continues, or did up to 1916?

"A. To a limited extent.

"XQ. Will you refer to the last page of that catalogue or bulletin? There is a list of affiliated companies given, which, I notice, does not contain the defendant, the National Brake & Electric Company. It is a fact, is it not, that that company was not generally advertised to the trade as being affiliated with either the Air Brake Company or the Traction Brake Company?

"A. I do not recall that it was so advertised."

From the testimony of the vice president:

"XQ. And the public was encouraged to look upon them as competitors, was it not?

"A. No effort was made to encourage them in that belief.

"XQ. Or to discourage them?

"A. Or to discourage them.

"XQ. It was not customary to list it in your list of affiliated companies in publications, I suppose?

"A. I believe not."

Summing up this paragraph we find that in the two lawsuits there was no identity of issues, no conflict in matters decided, and no identity or privity of parties within the knowledge or notice of respondents.

[11] V. As to petitioner's contention that respondents, by conducting the Pennsylvania litigation against the Westinghouse Traction Brake Company without bringing into that record their Wisconsin decree, released or estopped themselves from claiming the benefit of that decree, the answer is found in the facts stated in part C of the preceding section. Plainly respondents had no intention to cancel the Wisconsin decree, for they had no knowledge or notice which would require them to elect between holding a perfectly good decree and surrendering it in order to litigate the merits again with the same party.

[12] VI. But, speaking of estoppels, it is interesting to note that petitioner is estopped from claiming its alleged estoppel against respondents. With full knowledge of all the facts, including the facts of respondents' ignorance and their futile attempts to unearth the concealed relationship, petitioner waited from July 3, 1917, the date of the decision in the Court of Appeals for the Third Circuit (the entry of the decree by the District Court on October 1, 1917, was in obedience to the mandate), until March 9, 1918, when it first applied to the Wisconsin District Court to interject its proposed answer of res adjudicata, while respondents during those months, with great difficulty and expense, were endeavoring against active resistance and counterattack to bring petitioner to book for its wrongful appropriation of ·respondents' property. Here was knowing action that caused the unknowing respondents to change their position substantially for the worse if they are not to have the benefit of the Wisconsin decree; and petitioner has never offered to make respondents whole even in that respect.

[13] VII. Petitioner is guilty of laches:

A. By its delay of eleven years in avowing the concealed relationship.

B. By its delay in presenting this petition, irrespective of the considerations stated in paragraph VI concerning its participation in executing the Wisconsin decree as a live decree and respondents' change of position for the worse.

VIII. Respondents have asked leave, which is granted, to amend their answer to this petition by adding that the Court of Appeals for the Third Circuit took jurisdiction over the appealable decree of the Pennsylvania District Court, not on an appeal, but on an alternative petition for a writ of certiorari or of mandamus, and based its jurisdiction on the consent of counsel in open court. But we do not think

it is necessary to take up respondents' contention that the Pennsylvania decrees are void for want of jurisdiction.

The petition, considered as an application for leave to file in the District Court a petition in the nature of a bill of review, is denied.